showing that those named and unnamed Federal Defendant(s), by and through a civil RICO Enterprise conspiracy, acted with deliberate indifference for a prolonged period of time -- since Kevir's arrival on the 8th floor of MDCLA -- and administered cruel and unusual punishment ever since that time, in violation of Constitutional rights, upon Plaintiff.

246.   Said failure to investigate clearly indicates and establishes that these named and unnamed Federal Defendant(s) were, in fact and indeed, complicit in conspiring to perpetrate Hate Crime Acts, in violation of 18 U.S.C. §249, to inflict great bodily harm upon Plaintiff Williams.  (See Exhibit 1).  Whats-more, these named and unnamed Federal Defendant(s) failed to take the necessary "steps which may have prevented the harm" they and Kevir inflicted upon Plaintiff -- steps each were obligated and duty bound to take.  See Clem, 566 F.3d at 1181-82.  Further, these named and unnamed Federal Defendant(s) completely disregarded a risk that was clearly "excessive" and one that posed a "sub-stantial risk of serious harm" -- a risk each Federal Defendant(s) knew of. See Farmer, 511 U.S. at 837.

247.   Once Plaintiff was released from the "SHU," Bureau of Prison officials engaged in the practice they are best at -- the practice of doing things Backwards On  Purpose -- with the deployment of the theorem of "too little, too late" with the housing of Plaintiff on the 5th floor of MDCLA, far removed from and well after being severely beaten by Defendant Omar Kevir. However, the fact of the matter is that this theorem did not solve the pro-blems or protect Plaintiff Williams, or the at-risk-gay-population.  In the weeks and months subsequent to the attack and severe beating Plaintiff Williams received from Defendant Omar Kevir, the situations Plaintiff was faced with, because of this civil RICO Enterprise conspiracy, worsened.

248.   The resulting and continual physical, psychological, and emotional

trauma Plaintiff Williams experienced subsequent to the brutal attack and medical neglect is immeasurable. Plaintiff Williams experienced recurring feelings of anxiety, tenseness, and panic attacks. Plaintiff Williams was forced, because of the actions, inactions, and/or omissions of the civil RICO Enterprise co-conspirators, to live in a constant state of fear, in an impossible, unchanged situation, until the day he left MDCLA. This constant state of fear was exacerbated by a December 2013, beating of a man on the 5th floor of MDCLA, who was severely beaten simply because, he too, was gay. This fact is indicative of a systemic, total, and complete disregard by these named and unnamed civil RICO Enterprise co-conspirators, and MDCLA staff at all levels as a whole, of their lawful obligation and duty to protect **all** inmates from great bodily harm, and especially an at-risk-population, such as gays, and those accused of sex crimes.

249. Plaintiff WIlliams believes the actions, inactions, and/or omissions of civil RICO Enterprise conspiracy Defendant(s) Morales, Young, Unidentified Lieutenant #1, Proctor, Thomas, Estrada, and unknown others, are the cause of Plaintiff's constant state of fear. These Defendant(s) failed to protect Plaintiff Williams from harm and encouraged hateful and harmful acts to take place. Plaintiff Williams believes the actions, inactions, and/or omissions of these civil RICO Enterprise co-conspirators, because of Plaintiff's constant state of fear, was the cause of what happened next. Plaintiff also believes that, after the fall that broke Plaintiff's left femur in three (3) places, the actions, inactions, and/or omissions of these civil RICO Enterprise co-conspirators was cause for and a continuance of the next scheme of civil RICO "enterprise" conspiracy "predicate acts" by the herein listed Federal Defendant(s).

250. As averred herein, Plaintiff Williams fell on the concrete floor of the 5th floor of MDCLA at approximately 8:00 p.m., on Tuesday, January 28, 2014, and

was seriously injured by breaking his left femur in three (3) places. Some-time subsequent to that injury, Federal Defendant(s) Saulibio, Unidentified Lieutenant #2, Unidentified Officer #1, Corrections Officer De La Hoyas, Un-identified Officer #2, Unidentified Officer #3, De Vasa, Shinn, and unknown others, with malice and forethought, did conspire, after Plaintiff fell and broke his left femur in three (3) places, to commit great bodily harm upon Plaintiff Williams; and also did conspire to medically neglect Plaintiff with the end-result of serious deprivation of Constitutional rights, resulting in and including attempted murder,[5] deliberate indifference to a serious medical injury, cruel and unusual punishment, Intentional Infliction of Emotional Distress, obstruction of Justice, interfering with interstate shipments (18 U.S.C. §659), Mail Fraud,[5] Wire Fraud,[5] Hate Crime Acts (18 U.S.C. §249), and to bring other people -- known and unknown -- into the underlying civil RICO Enterprise co-conspiracy. These actions are clearly Hate Crime Acts, pursuant to and in violation of 18 U.S.C. §249 (a)(2)(A). (See Exhibit 1).

251. The next scheme of the civil RICO Enterprise conspiracy was also a well coordinated, well planned, and well executed Hate Crime Act carried out by these named and unnamed Federal Defendant(s). Elements of this scheme of "predicate acts" by civil RICO "enterprise" co-conspirators -- Defendant(s) Saulibio, Unidentified Lieutenant #2, Unidentified Officer #1, Corrections Officer De La Hoyas, Unidentified Officer #2, Unidentified Officer #3, De Vasa, Shinn, and unknown others, inter alia, include (1) failure to provide appropriate and urgently needed medical attention and care after Plaintiff Williams' left femur was broken in three (3) places at approximately 8:00 p.m., on Tuesday, January 28, 2014; (2) failure to properly or competently recognize or diagnose

---

[5] RICO predicate act under 18 U.S.C. §1961(1) and (5); and conspiring to violate under 18 U.S.C. §1962(d).

a broken femur; (3) failure to immediately immobilize Plaintiff's fractured left femur; (4) by literally "dumping" Plaintiff off a stretcher into his cell; (5) by failure to take diagnostic X-rays of Plaintiff's upper left leg immediately subsequent to the injury; (6) failure to ensure Plaintiff was immediately seen by a competent medical doctor or taken to a hospital; (7) failure to monitor Plaintiff's medical condition for twenty (20) plus hours after having been subjected to a serious, life-threatening injury -- a broken left femur in three (3) places; (8) failure to conduct follow-up medical visits/consults/encounters by MDCLA medical staff for the twenty (20) plus hours Plaintiff was once again left to medically fend and treat himself while seriously injured; and (9) failure of MDCLA staff -- herein listed Federal Defendant(s) and unknown others -- to prepare the first sentence of significant documentation regarding the serious and life-threatening injury Plaintiff had sustained, lack of treatment, or the subsequent dehumanizing conditions, including leaving Plaintiff unattended and unchecked, undue pain and suffering, and the emotional distress Plaintiff was forced to endure for over twenty (20) hours.

252. Each of these events -- the elements of this scheme of predicate acts -- perpetrated by the above listed Federal Defendant(s) occurred during Plaintiff's confinement at MDCLA, and specifically during a period of time from approximately 8:00 p.m., on Tuesday, January 28, 2014, through approximately 1:30 p.m., on Wednesday, January 29, 2014.

253. It is a fact that on Tuesday, January 28, 2014, Plaintiff Williams was housed in confinement on the 5th floor of MDCLA. It is also a fact that at approximately 8:00 p.m., on Tuesday, January 28, 2014, Plaintiff fell on the concrete floor, breaking his left femur in three (3) places. It is also a fact that shortly after this fall and very serious injury, Defendant Saulibio, a nurse on duty at the time and MDCLA staff, arrived at the scene of the fall.

254. Plaintiff Williams believes Defendant Saulibio knowingly, willfully, and wantonly, and with the knowledge and active participation of the other civil RICO enterprise co-conspirators herein listed, did perpetrate a Hate Crime Act of civil RICO Enterprise conspiracy by carrying out the predicate act of attempted murder[6] by doing great bodily harm to Plaintiff.

255. Immediately upon Defendant Saulibio's arrival on the scene, where Plaintiff Williams was seriously injured, Saulibio acted with clear deliberate indifference. Substantive predicate acts of civil conspiracy and civil RICO Enterprise at the scene of the fall, and subsequent actions, inactions, and/or omissions, consist of attempted murder,[6] deliberate indifference, medical negligence and malpractice, Intentional Infliction of Emotional Distress ("IIED"), cruel and unusual punishment, obstruction of justice, interfering with interstate shipments (18 U.S.C. §659), Mail Fraud,[6] Wire Fraud,[6] and Hate Crime Acts (18 U.S.C. §249).

256. Plaintiff Williams believes that Defendant Saulibio was the leader/organizer of this scheme of predicate acts of the civil RICO Enterprise conspiracy and that he acted in concert with **all** Federal civil RICO co-conspirators to commit great bodily harm -- including attempted murder[6] -- upon Plaintiff, to act with deliberate indifference, to violate Plaintiff's Constitutional and civil rights, and to commit Hate Crime Acts against Plaintiff. This scheme of the civil RICO Enterprise conspiracy was also a well coordinated, well planned, and well executed Hate Crime Act carried out by these named and unnamed Federal Defendant(s).

257. Once again Plaintiff **was not provided** with the medical care and treatment that human decency, and modern society, demands. Instead, Plaintiff

---

[6] RICO predicate act under 18 U.S.C. §1961(1) and (5); and conspiring to violate under 18 U.S.C. §1962(d).

81

was subjected to a curt, quick, inadequate, and potentially deadly upprofessional medical assessment by Defendant Saulibio. This encounter of gross medical incompetence was not only filled with Saulibio's obnoxious tones of sarcasm and obvious hate of Plaintiff Williams, it was also an act of clear deliberate indifference and a Hate Crime Act. Whatsmore, because of Defendant Saulibio's deliberate indifference, his assessment of Plaintiff's injuries was clearly and medically inaccurate.

258. Plaintiff Williams has herein averred how Defendant Saulibio stood over him repeatedly shouting "Get up!" Plaintiff has herein averred how Defendant Saulibio immediately began palpating Plaintiff's upper left leg and hip area, and how Saulibio grabbed Plaintiff's left leg at the ankle and knee, raising it, twisting it, and pushing and pulling it -- shaking it as if a wet noodle. Not only were Defendant Saulibio's actions cruel, barbaric, and sadistic, they were also acts of deliberate indifference, they were predicate acts of attempted murder by a civil RICO Enterprise clearly constituting Hate Crime Acts.

259. Plaintiff Williams has herein averred to how he had repeatedly begged for Defendant Saulibio to stop inflicting pain in such an inhumane manner; yet, Saulibio did not stop. Plaintiff has also herein averred how the excruciating pain -- pain that he was experiencing because of a serious, life-threatening injury -- was extremely intense and how it was exacerbated by Defendant Saulibio's purposeful, hateful, deliberate actions to inflict more pain. Defendant Saulibio's diagnosis that "Nothing is broken" after the femur was "checked" was clearly wrong, when the signs and symptoms of Plaintiff's injury clearly indicated otherwise. This fact is fully supported by the observations and comments of inmate, and witness, Joel Dreyer, who stated to Saulibio, and other MDCLA staff present at the time, that "it looks like his [Plaintiff's] hip is broken. He should be taken to a hospital immediately." (See Exhibit 8).

Though an inmate, Dreyer announced himself to these civil RICO co-conspirators as a medical doctor, which he is. (See Id.). Defendant Saulibio's mis-diagnosis; his actions, inactions, and/or omissions subsequent to this mis-diagnosis, could have been fatal to Plaintiff Williams.

260. Defendant Saulibio's failure to immobilize Plaintiff's left leg, in and of itself, is not only an act of deliberate indifference, but also a predicate act of the civil RICO Enterprise conspiracy -- a predicate act that could have caused Plaintiff's death. Whatsmore, this scheme of predicate acts sets into motion the next set of predicate acts in the continuance of the civil RICO Enterprise conspiracy.

261. Plaintiff Williams was next picked-up -- physically -- without his left leg immobilized, and placed on a stretcher by unknown and unnamed MDCLA staff. This act had the potential of killing Plaintiff. These unknown Federal Defendant(s) of the civil RICO Enterprise conspiracy committed the predicate act of attempted murder, by moving Plaintiff Williams in such a way with the obvious medical condition that was presented. This predicate act is not only a clear showing of deliberate indifference, but is also clearly indicative of the continuation of Hate Crime Acts.

262. While Plaintiff Williams was on the stretcher, Defendant Saulibio continued to move and press upon Plaintiff's seriously injured left leg, inflicting more intense pain and potential injury. At this point, Plaintiff knew something was seriously wrong with his left leg -- the extreme, non-stop pain was a clear indicator of this fact -- and Plaintiff was fearful that, if Saulibio continued, he could die. Once again, while on the stretcher, Plaintiff repeated his request to be seen by a medical doctor, and his request, in spite of his serious injury and obvious pain, was again ignored by this group of civil RICO Enterprise co-conspirators. Plaintiff was not seen by a medical

doctor, nor did he receive reasonable or competent medical treatment on the evening of Tuesday, January 28, 2014.

263.  Instead, Plaintiff Williams was carried by stretcher to his cell. This element of predicate acts was carried out by Defendant(s) Unidentified Officers #1 and #2.  These two civil RICO Enterprise co-conspirators were supervised by Defendant Unidentified Lieutenant #2.  Unidentified Lieutenant #2 is the civil RICO Enterprise co-conspirator who was the leader/organizer of the elements of this phase of this scheme of the underlying civil RICO Enterprise conspiracy directing predicate acts, including the predicate act of attempted murder.

264.  On the evening of Tuesday, January 28, 2014, sometime after 8:00 p.m., on the 5th floor of MDCLA, and under the direct supervision of Unidentified Lieutenant #2, Unidentified Officer #1 and Unidentified Officer #2 committed the predicate act of attempted murder in a civil RICO Enterprise conspiracy by dumping Plaintiff Williams off a stretcher that he was being carried on, because he was in pain and could not walk because of a broken left femur, into his cell and onto the concrete floor -- essentially, the very same concrete floor that, minutes earlier, had broken Plaintiff's left femur in three (3) places.

265.  Plaintiff Williams believes these unidentified Defendant(s) knowingly, willfully, wantonly, and with malice and forethought, and with the knowledge of and in concert with active participation of the other Federal civil RICO Enterprise co-conspirators listed herein, did perpetrate a Hate Crime Act of civil RICO Enterprise conspiracy by carrying out the predicate act of attempted murder.[7]  The actions, inactions, and/or omissions of these three (3) Unidentified

---

[7] RICO predicate act under 18 U.S.C. §1961(1) and (5); and conspiring to violate under 18 U.S.C. §1962(d).

Defendant(s) are clear acts of deliberate indifference with total disregard for Plaintiff's safety, well being, or Constitutional rights.

266.  This phase of this scheme of the civil RICO Enterprise conspiracy was also a well coordinated, well planned, and well executed Hate Crime Act designed to inflict unwarranted great bodily harm to Plaintiff Williams.  These acts, perpetrated by these three (3) Unidentified Defendant(s) could have, very easily and within a matter of mere minutes, killed Plaintiff.  Instead of assisting Plaintiff Williams to his bed, these three (3) Unidentified Defendant(s) dumped Plaintiff on the floor, leaving that difficult task to another inmate, Plaintiff's cell mate, inmate witness Michael Peterson.  (See Exhibit #7).

267.  When these three (3) Unidentified Defendant(s) locked the cell door and walked away, Plaintiff Williams was, once again, **not provided** with the medical care and treatment that human decency and modern society demands.  Plaintiff was, once again, forced to fend for himself while, once again, seriously injured. Whatsmore, Plaintiff was forced to endure a life-threatening injury -- with **no** medical treatment whatsoever -- and forced to endure the absolute, unconscionable, and outrageously inhumane conditions for over twenty (20) hours.

268.  Because of the deliberate indifference and predicate acts perpetrated by the herein listed Federal Defendant(s) of the civil RICO Enterprise conspiracy described herein, for over seventeen (17) hours Plaintiff Williams: (1) was forced to lie in his bed, unable to move literally; (2) was unable to sleep; (3) was denied food; (4) was forced to endure the most painful experience of his entire life, and was forced to do so without any medication for pain; (5) was unable to get up to use the toilet, resulting in being forced into the situation of urinating on himself; (6) was forced to lie in his own urine and in a wet bed; (7) was subjected to unnecessary humiliation; (8) was forced to live in inhumane living conditions; (9) was the recipient of cruel and unusual punishment

in violation of the Fifth and Eighth Amendments; (10) was unseen and unchecked by MDCLA staff -- medical staff or otherwise; (11) was left to fend for himself while seriously injured; and (12) was subjected to dehumanizing conditions that were tantamount to torture.

269. Each of the foregoing acts of deliberate indifference and predicate acts of a civil RICO Enterprise conspiracy were clearly, by design, carried out by the herein listed Federal Defendant(s) with the expressed intent to deprive Plaintiff Williams of Constitutional rights, to inflict undue pain and suffering, and are clearly Hate Crime Acts.

270. With regards to this particular scheme and it  elements of predicate acts in the continuation of a civil RICO Enterprise conspiracy, the herein listed Federal co-conspirators did, in fact and indeed, conspire to conceal the extent of their respective actions, inactions, and/or omissions; their respective acts of deliberate indifference; and to conceal the true extent and severity of Plaintiff Williams' injuries, in a clear effort to hide the Hate Crime Acts that each of them had committed.  These stated facts are evidenced by the clear lack of the existence of any significant medical or incident reports.  Plaintiff believes the concealment and/or omission of material facts was intentional.

271. Whatsmore, this fact of concealment and omission leads Plaintiff to believe that he was maliciously deprived of critically needed medical treatment by a rogue medical staff that had factually and willfully acted with deliberate indifference, which was clearly driven by a civil RICO Enterprise conspiracy to perpetrate Hate Crime Acts against Plaintiff Williams and to deprive him of Constitutional rights.  This is the factual basis of Plaintiff Williams to have, once again, needlessly endured the cruel and unusual punishment inflicted by the named and unnamed Federal Defendant(s) herein listed -- further violating Plaintiff's Constitutional rights.

272.   This entire obfuscation -- regarding the brutal attack and injury from the fall -- of Plaintiff Williams' protection, urgently needed medical treatment, his ignored pleas for help, and his having **not** been treated as a human being, leads Plaintiff to believe that these MDCLA staff members were acting as a civil RICO Enterprise and were, in fact and indeed, co-conspirators acting in concert with other named and unnamed civil RICO Enterprise co-conspirators according to an implied agreement made by them not to protect Plaintiff and not to provide Plaintiff with medical treatment that was factually needed. These are yet further examples and demonstrations making a clear showing of the acts of **deliberate indifference** of named and unnamed MDCLA staff and officials, that are civil RICO Enterprise co-conspirators whom conspired with inmate Defendant Omar Kevir, and who are all herein listed as Defendant(s), and did conspire to do great bodily harm to Plaintiff Williams. See Estelle v. Gamble, 429 U.S. 97 (1976).

273.   As herein averred, the after-effects resulting from the injuries associated with the "predicate acts" of "racketeering activity," deliberate indifference, medical neglect, denial of Constitutional rights, and Hate Crime Acts perpetrated by the listed civil RICO Enterprise co-conspirators included: (1) recurring episodes of anxiety, tenseness, fear, and panic attacks; (2) severe headaches; (3) trouble sleeping; (4) dizziness, poor coordination, and loss of balance; (5) sensitivity to light; (6) inability to concentrate; (7) slowed thinking; (8) inability to complete simple tasks; (9) forgetfulness; (10) eye problems; (11) neck pain and problems; (12) back pain and problems; (13) knee pain and problems; and (14) the inability to walk without the use of an ambulatory walker.  To this date, Plaintiff Williams still experiences these painful, debilitating after-effects.

274.   Also, as averred herein, Plaintiff Williams is an experienced Professor

with a Ph.D., is a published author of 14 books, and has over 160 published journal articles, essays, reviews, and chapters. Obviously, writing has been a large part of Plaintiff's life. Plaintiff Williams had planned on utilizing these writing skills as an income supplement during his retirement years. However, because of the lingering after-effects of what Plaintiff was forced to endure, as articulated herein, while confined at MDCLA will not allow that to happen.

275. 18 U.S.C. §1964 provides that –

"Any person injured in his business or property by reason of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit...." See 18 U.S.C. §1964(c).

The pattern of "racketeering activity" of "predicate acts" by the civil RICO Enterprise co-conspirators, as articulated throughout this Verified Complaint, has greatly "injured" Plaintiff Williams' "business or property," greatly diminishing his ability to make money, essentially, for ever. See Id. See also, Doe v. Roe, 958 F.2d 763, 768 (7th Cir. 1992); Alley v. Angelone, 962 F. Supp. 827, 832-33 (E.D. Va. 1997).

276. The facially apparent consistency of the predicate acts is obviously the same for each scheme articulated herein. Whatsmore, the consistency in Plaintiff's factual circumstance is striking.

277. The substantive predicate acts constituting RICO violations from the felonious removal, alteration, and/or outright omission of Plaintiff's medical records include, but are not limited to: attempted murder, obstruction of justice, mail fraud, wire fraud, interfering with interstate shipments, and Hate Crime Acts. The removal, hiding, concealing, obfuscation, and/or the destruction of incriminating evidence of the herein listed Federal Defendant(s) misdeeds is clearly indicative of the intent of said Defendant(s) to perpetrate their injury against Plaintiff Williams. The end-result for Plaintiff is

life-long conditions of pain and suffering; of having to worry about the conditions listed herein worsening; of knowing that his ability to make money has been forever diminished; and knowing that the problems with his left leg will only get worse over time. Every element of each scheme of predicate acts in this civil RICO Enterprise conspiracy was avoidable, however, due to acts of deliberate indifference on the part of the herein listed Federal Defendant(s) and Hate Crime Acts perpetrated by **all** herein listed Defendant(s), each one of the Defendant(s) contributed, in concert with one another, to inflict great bodily harm, undue pain and suffering, and deprivation of Plaintiff's Constitutional rights.

### D.    Attempted Murder

278. It is coincidence that during the period from on or about September 1, 2013, through and beyond January 29, 2014, Warden Thomas, Warden Shinn, and Captain Morales -- as administrative staff at MDCLA -- failed to protect Plaintiff Williams and his Constitutional rights. It is no coincidence that during this same period, supervisory staff at MDCLA -- Unidentified Lieutenant #1 and Unidentified Lieutenant #2 -- failed to protect Plaintiff Williams and his Constitutional rights. It is no coincidence that during this same period, other MDCLA staff -- Defendant(s) Young, Proctor, Estrada, De Vasa, Unidentified Officer #1, De La Hoyas, Unidentified Officer #2, Unidentified Officer # 3 -- failed to protect Plaintiff Williams and his Constitutional rights. It is no coincidence that each of the above listed civil RICO Enterprise co-conspirators did conspire and acted in concert with and allowed Defendant Omar Kevir to brutally attack and beat Plaintiff Williams on October 7, 2013; nor that because of said conspiracy they **all** are complicit in that act -- clearly a Hate Crime Act. It is no coincidence that Defendant Young was an active participant in the Hate Crime Act committed on October 7, 2013, when Defendant Omar Kevir

89

savagely beat Plaintiff Williams; a fact evidenced by Young walking up to Kevir while the beating was taking place and asking Kevir if he was finished.  It is no coincidence that MDCLA medical staff, especially Defendant Saulibio, failed to provide any medically indicated treatment -- ever -- for the severe injuries Plaintiff Williams sustained subsequent to the brutal attack and beating on October 7, 2013, or for the very serious injury of a broken femur on January 28, 2014.

279.  It is a fact, indeed, that each of the aforementioned named and unnamed Defendant(s) perpetrated Hate Crime Acts against Plaintiff Williams.  It is a fact, indeed, and no coincidence that **all** the herein listed Defendant(s) -- along with an untold number of other persons unknown to Plaintiff -- created, joined, and actively participated in a civil RICO Enterprise conspiracy, and did in concert with one another, conspire to commit the herein alleged and articulated pre-dicate acts of racketeering activities to intentionally do great bodily harm to Plaintiff Williams, including the act of attempted murder.  There have been multiple instances of the predicate act of attempted murder committed by the civil RICO Enterprise co-conspirators -- named and unnamed Defendant(s) -- resulting from the severe beating and the fall, as articulated herein, clearly establishing a pattern  of racketeering activity for RICO under 18 U.S.C. §1961. Whatsmore, each instance of this predicate act also clearly constitutes a Hate Crime Act against Plaintiff Williams.

E.    Mail and Wire Fraud

280.  On those dates previously herein plead, and during the time of transfer from MDCLA to FCI - Englewood, Plaintiff's medical records and case file were shipped via the U.S. Mail and/or by the U.S. Marshal Service. See 18 U.S.C. §1341.  In early February 2015, Plaintiff was transferred from MDCLA to FCI - Englewood.  This transfer involved several stops -- hold-overs --

along the way.  Plaintiff believes, and alleges herein, that documents contained within his medical and case file records have been intentionally and feloniously altered, deleted, removed, and/or otherwise purposefully omitted, in an attempt to conceal and obfuscate material facts of the elements of the schemes of pre-dicate acts of a pattern of racketeering activities by the herein listed Federal Defendant(s).  Each of these hold-over locations are, in effect, another pre-dicate act instance under the RICO statute of **Mail Fraud**.  See 18 U.S.C. §1961. See also, 18 U.S.C. §1341.

281.  Most all inmate records are on a central computerized data base that is maintained by the BOP outside the State of California -- the state where MDCLA is located.  Thus, when any intentional and/or felonious alteration, deletion, removal, and/or purposefully omitted information of said records is done, each instance constitutes another predicate act of Interference with Interstate Shipments in violation of 18 U.S.C. §659, and is also listed as a predicate act for purposes of RICO activity under 18 U.S.C. §1961.

282.  If any of the herein listed Federal Defendant(s) intentionally and/or feloniously altered, deleted, removed, and/or otherwise purposefully omitted any information or input data onto the centralized computer data base records, each instance thereof constitutes **Wire Fraud** in violation of 18 U.S.C. §1343, and are predicate acts for purposes of RICO activity under 18 U.S.C. §1961.

F.   RICO Enterprise

283.  Herein listed Federal Defendant(s) Thomas, Morales, Young, Unidentified Lieutenant #1, Proctor, Estrada, De Vasa, Saulibio, Unidentified Lieutenant #2, Unidentified Officer #1, De La Hoyas, Unidentified Officer #2, Unidentified Officer #3, and Shinn,  as herein articulated and demonstrated by the consistency of two (2) or more predicate acts over a period of less than ten (10) years, belonging to an enterprise-in-fact, as each is either a U.S. Government Ad-

ministrator, supervisor, or employee, and did from an enterprise to perpetrate the covert and predicate acts that are sufficiently plead herein, within Plaintiff's Verified Complaint, giving rise to this cause of action, as a civil RICO Enterprise conspiracy.  Defendant(s) Thomas, Morales, Young, Proctor, Estrada, and De Vasa, as herein articulated and demonstrated by the consistency of two (2) or more predicate acts over a period of less than ten (10) years, belonging to an enterprise-in-fact, as each is either a U.S. Government Administrator, supervisor, or employee, and did form an enterprise with inmate Omar Kevir, to perpetrate the covert and predicate acts that are sufficiently plead herein, within Plaintiff's Verified Complaint, giving rise to this cause of action, as a civil RICO Enterprise conspiracy.  This enterprise, as created by the herein listed Defendant(s), clearly exhibits all of the tell-tale signs of a **"pattern of racketeering activity,"** as defined by the federal courts.  Each of the foregoing Defendant(s) are the actors in this **"enterprise"** and the averred predicate acts herein is the **"pattern of racketeering activity."**

284.  The main objective of this particular civil RICO Enterprise conspiracy was to abuse the position of trust of those placed in a position of authority, and to abuse that vested authority to institute a pattern of racketeering activity to perpetrate great bodily harm to Plaintiff Williams, including the predicate act of attempted murder, and to perpetrate Hate Crime Acts against Plaintiff Williams.  The herein listed U.S. Government administrator, supervisor, and employee Defendant(s), in concert with inmate Defendant Omar Kevir, orchestrated a conspiracy to harass, harm, injure, slander, violate, defraud, attempt to kill, and to continually retaliate against Plaintiff Williams.

G.   Summation of Civil RICO Enterprise Conspiracy

285.  In summation of the civil RICO and conspiracy claims averred herein, Defendant(s), with malice and forethought, conspired to do great bodily harm

against Plaintiff Williams -- including attempted murder; Federal Defendant(s), with malice and forethought, conspired to willfully perpetrate deliberate indifference by depriving Plaintiff Williams of urgently required medical attention -- twice, failed to protect Plaintiff, conspired to deprive the victim Plaintiff of substantive rights, conspired to alter, delete, conceal, and/or omit inculpatory evidence whilst violating many federal statutes; and all listed Defendant(s) perpetrated Hate Crime Acts against Plaintiff Williams. Each element of predicate acts are a violation under RICO, as codified in 18 U.S.C. §1961, et seq. These predicate acts were perpetrated against Plaintiff Williams simply because of his sexual orientation and his charges, and thus, clearly constitute Hate Crime Acts, as codified in 18 U.S.C. §249(a)(2)(A).

### XVIII.    LIABILITY OF INDIVIDUAL DEFENDANTS IN THIS ACTION

286. Only a person who "subjects or causes to be subjected" the plaintiff to a deprivation of Constitutional rights can be held liable. See 42 U.S.C. §1983. This personal involvement requirement also applies to civil rights actions against federal officers in a Bivens action. See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991). As stated in Colon v. Coughlin, 58 F,3d 865 (2nd Cir. 1995), personal involvement can be shown if:

> "(1) the defendant participated during the alleged constitutional violation, (2) the defendant after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising sub-ordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." See Colon, 58 F.3d at 873. Importantly, "[w]here the constitutional claim does not require a showing of discriminatory intent, but relies on the unreasonable conduct or deliberate in-difference standards of the Fourth and Eighth Amendments, the per-sonal involvements [of defendants] may still apply. See Sash v. U.S., 674 F. Supp. 531, 544 (S.D.N.Y. 2009).

287. Defendants who directly participate in Constitutional violations may

be liable, and a direct participant in a violation must know the facts that the conduct was illegal in order to be liable. See Redman v. County of San Diego, 942 F.2d 1435, 1449 (9th Cir. 1991). A defendant may also be held liable "if the defendant sets in motion a series of events" that were known, or reasonably should have been known, would cause a Constitutional violation, even if others actually performed the violations. See Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir. 1988); accord, Bruner v. Baker, 506 F.3d 1021, 1026 (10th Cir. 2007); Valdes v. Crosby, 450 F.3d 1231, 1239-43 (11th Cir. 2006). Whatsmore, prison personnel may be held liable for their personal failure to act if said failure results in a constitutional violation. See Gamble, 429 U.S. at 106. See also, Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990); Lewis v. Mitchell, 416 F. Supp. 2d 935, 945 ( S.D. Cal 2005)(quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). Officers and supervisors also can be held liable if they are present, but fail to intervene, when a prisoner is subjected to brutality by staff and/or assualt by other inmates; and, those who failed to act on something that was clearly a Constitutional rights violation can also be held liable. See Ashcroft v. Igbal, 556 Y,S, 662 (2009).

288. Herein, Plaintiff Williams has clearly identified those Defendant(s), as co-conspirators in a civil RICO Enterprise, who subjected or caused Plaintiff to be subjected to deprivation of Constitutional rights per 42 U.S.C. §1983 and Terrell, supra. Plaintiff has herein articulated personal involvement of each of the listed Defendant(s), per Colon, 58 F.3d at 873; how Federal actors acted with purposeful deliberate indifference to violate Plaintiff's Fourth and Eighth Amendment rights, and how they acted in concert with each other and inmate Defendant Kevir in a civil RICO Enterprise; and how all listed Defendant(s), through a civil RICO Enterprise, conspired to perpetrate Hate Crime Acts -- including attempted murder -- in violation of 18 U.S.C. §249.

Herein, Plaintiff has clearly articulated listed Defendant(s) direct participation in Constitutional rights violations, per the holdings of Redman, 942 F.2d at 1449. Plaintiff has also identified how particular Defendant(s) actions, inactions, and omissions "set in motion a series of events" that caused Constitutional violations, per the holdings of supra, Conner, Bruner, Valdes. Plaintiff has herein articulated how Defendant(s) failure to act on Constitutional violations per the holdings of supra, Gamble, Alexander, Lewis, and Johnson caused a furtherance of Constitutional violations. Herein, Plaintiff has identified those Defendant(s) who failed to intervene or act on something that was clearly a Constitutional rights violation, per Iqbal, supra.

289. Plaintiff Williams believes he has herein identified all persons who were directly or indirectly engaged in a civil RICO Enterprise; who, through this enterprise conspired to do great harm to Plaintiff, including the crime of attempted murder; who also conspired to deprive Plaintiff of Constitutional rights; who acted with deliberate indifference and medical neglect; and who also conspired to commit Hate Crime Acts against Plaintiff Williams. Plaintiff believes he has identified the right persons that are responsible for inflicting inmense, undue, and unnecessary pain and suffering upon him. Additionally, Plaintiff has clearly articulated how each of the herein listed Defendant(s) are liable; thus, each Defendant must be held accountable for their respective actions, inactions, and/or omissions.

### XIX.    COUNTS ALLEGED IN THIS CAUSE OF ACTION

### COUNT I

**PLAINTIFF'S CAUSE OF ACTION AGAINST FEDERAL DEFENDANT(S) FOR CRUEL AND UNUSUAL PUNISHMENT AND DELIBERATE INDIFFERENCE THAT VIOLATES PLAINTIFF'S EIGHTH AMENDMENT RIGHTS WITH SUPPORTING AUTHORITIES**

290. Plaintiff Williams re-alleges and incorporates by reference all

foregoing averred allegations, claims, and information, as if fully set forth herein, as part of this **Verified Complaint, FTCA Action,** and **Bivens** Action.

291. During all times material hereto, Plaintiff Williams was in the custody of, under the exclusive care of, and under the medical management of the Department of Justice, Federal Bureau of Prisons, at MDCLA; and as agents, actors, and employees of the Federal Government's Federal Bureau of Prisons, the herein listed Federal Defendant(s) are fully subject to any and all constraints and restrictions imposed by said Defendant(s) upon Plaintiff Williams.

292. On two (2) separate occasions, Plaintiff Williams was in urgent need of immediate medical care and treatment, yet, Plaintiff received no medical care or treatment whatsoever from MDCLA staff.  The first occasion where Plaintiff required, yet was denied, medical care and treatment was after having been brutally attacked, and beaten about the head, by inmate Defendant Omar Kevir, on October 7, 2013 (See Exhibits 4, 5); with the second occasion occurring on January 28, 2014, when a fall on the 5th floor of MDCLA resulted in Plaintiff's left femur breaking in three (3) places.  (See Exhibit 6).  Each of these events resulted in serious injuries, that clearly required urgent and immediate medical care and treatment, an event that also took place while Plaintiff was in Federal custody at MDCLA.

293. Regarding the brutal attack and beating Plaintiff received on October 7, 2013, Federal Defendant(s), particularly inclusive of Warden Thomas, Captain Morales, Corrections Officer Young, Mr. Proctor, Unidentified Lieutenant #1, Corrections Officer Estrada, and an untold number of other unknown and unnamed Federal agents, actors, and employees, were directly responsible for protecting Plaintiff Williams from an act of violence -- an act that each was fully aware of -- yet, each of them failed to protect Plaintiff from receiving great bodily harm, which are not only acts of deliberate indifference, but are Hate Crime Acts as well.  See Farmer, 511 U.S. at 834-47; Hearns, 413 F.3d at 1041; Case,

301 F.3d at 606-07; Flint, 207 F.3d at 353-54.  See also, 18 U.S.C. §249(a)(2)(A).

Also, regarding the brutal attack and beating Plaintiff received on October 7,

2013, and because of the aforementioned Defendant(s) failure to protect Plaintiff

Williams, Federal Defendant(s), particularly inclusive of  Warden Thomas, Health

Services Administrator De Vasa, Nurse Knight, Dr. Toh, and an untold number of

unknown and unnamed Federal agents, actors, and employees, who were all directly

responsible for Plaintiff Williams' medical care (**and responsible for the lack**

**thereof**), that was done and not done for Plaintiff; yet, they failed to provide

urgently needed medical care and treatment for serious injuries.  See McGuckin,

974 F.2d at 1059 (holding "A showing of 'deliberate indifference' involves an

examination of two elements: the seriousness of the prisoner's medical need and

the nature of the defendant's response to that need.  Because society does not

expect that prisoners will have unqualified access to health care, deliberate

indifference to medical needs amounts to an Eighth Amendment violation only if

those needs are 'serious.'")(internal citations omitted).

294.  **A "serious" medical need exists if the failure to treat a prisoner's**

**condition could result in further significant injury or the "unnecessary and**

**wanton infliction of pain.**"  Gamble, 429 U.S. at 104 (emphasis added).  Gamble

clearly explains the factual circumstances to which Plaintiff Williams was sub-

jected, as articulated herein.  In this instance, the simple solution was for

Defendant(s) to have properly examined Plaintiff; and then to have followed

clearly established blunt force head trauma protocol.  Instead, Plaintiff

Williams received no medical care whatsoever, and was placed in the "SHU" with-

out even as much as an ice-pack for the swelling, or an asprin for pain --

Plaintiff was left to treat himself with nothing while confined in the "SHU."

Subsequent to the brutal attack and beating, because of the deliberate indifference

of these Defendant(s), Plaintiff was forced to endure excruciating pain and

suffering for a prolonged period of time, in violation of the Eighth Amendment's proscription against cruel and unusual punishment. To this day, Plaintiff continues to experience pain and suffering of after-effects, as articulated herein, of these listed Defendant(s) and their acts of deliberate indifference.

295. These circumstances, unfortunately, were not simple, and Plaintiff Williams was unfortunate enough to have had to suffer at the misdeeds of the Defendant(s) listed herein, again with the denial of urgently needed and critical medical care and attention. On January 28, 2014, Plaintiff Williams fell on the concrete floor of the 5th floor of MDCLA (See Exhibit 6), resulting in a break of his left femur in three (3) places. (See Id.). Federal Defendant(s), particularly inclusive of Warden Thomas, Warden Shinn, Health Services Administrator De Vase, Dr. Toh, Nurse Saulibio, and an untold number of unknown and unnamed Federal agents, actors, and employees, who were all directly responsible for Plaintiff Williams' medical care (**and responsible for the lack thereof**), that was done and not done for Plaintiff; and these Defendant(s) acted in direct association and in concert with Defendant(s) Unidentified Lieutenant #2, Unidentified Officer #1, Corrections Officer De La Hoyas, Unidentified Officer #2, Unidentified Officer #3, and an untold number of unknown and unnamed Federal agents, actors, and employees. See McGuckin, supra. These Defendant(s) denied Plaintiff urgently needed medical care and treatment for an obvious and "serious" injury, per Gamble, supra, and clearly acted with deliberate indifference, and committed Hate Crime Acts, per supra, Farmer, Hearns, Case, Flint. See also, 18 U.S.C. §249.

296. The acts of deliberate indifference committed by herein listed Federal Defendant(s) in the aforementioned incidents are clearly connected, are clearly instances of cruel and unusual punishment in violation of the Eighth Amendment, and clearly are instances of Hate Crime Acts in violation of 18 U.S.C. §249

**and** Plaintiff's substantive rights in violation of the Constitution of the United States.

297.  Because of the deliberate indifference of the herein listed Defend-ant(s), coupled with the fact that each failed to protect Plaintiff, and the fact each allowed Defendant Kevir to attack and beat Plaintiff Williams, Plaintiff will for the remainder of his life feel the after-effects, as herein articulated, and will be in pain and will suffer.  If the Federal Defendant(s) had been pro-active, had protected Plaintiff, had practiced established norms of inmate security and safety, and had provided appropriate medical care, the resulting after-effects Plaintiff must face for the remainder of his life would have been avoided.  This entire cause of action boils down to the accountability of these listed Defendant(s).

298.  Importantly, <u>McGuckin</u> also states: "The existence of an injury that a **reasonable doctor** or **patient** would **find important** and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." (See Exhibit 19 - Chronic Care Health Problems). "On the other hand, a finding that the defendant repeatedly failed to treat an inmate properly or that a single failure was  egregious **strongly suggests** that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs.  See McGuckin, 974 F.2d at 1059.  See also, <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1313-14 (9th Cir. 1989)(per curiam); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 201 (9th Cir. 1989).  In effect, the more serious the needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established "deliberate in-difference" on the part of the defendant.  See <u>Id</u>.

299.  The foregoing precedent is identical to the circumstances Plaintiff

Williams has claimed herein. Plaintiff Williams' serious medical needs on October 7, 2013, necessitated an examination by a competent medical doctor with expertise in blunt force head trauma and potential concussion injuries. On January 28, 2014, Plaintiff Williams' serious medical needs necessitated immediate immobilization of the left leg, an X-ray of the left leg and hip area, and an examination by a competent medical doctor with expertise in the area of orthopedics. The serious medical needs of Plaintiff Williams, on both occasions, were obvious and imperative. Instead of receiving the appropriate medical needs, care, or attention that Plaintiff's serious injuries necessitated, the herein listed Defendant(s) ignored and procrastinated these very medical needs. In October, 2013, Plaintiff was placed in the "SHU" for nearly three (3) weeks without any medical attention whatsoever. In January, 2014, Plaintiff was placed in his cell, with a broken left femur for over twenty (20) hours — placed in a situation where any wrong move made by Plaintiff could have very easily been fatal. Plaintiff was twice forced to endure unnecessary pain and suffering, resulting from extremely serious injuries and conditions, requiring urgent medical care, treatment, and supervision, whilst his serious medical needs were completely ignored by the herein listed Federal Defendant(s).

300. Obviously, the torturous actions of said Defendant(s) herein listed, has had a negative impact upon Plaintiff Williams' remaining quality of life — including the ability to engage in activities that produce income. Everything that happened to Plaintiff at MDCLA started with the failures of MDCLA staff, as herein identified as Federal Defendant(s), and their respective failures to protect and medically treat Plaintiff. Everything that happened to Plaintiff was preventable, but for the failures and deliberate indifference of MDCLA staff, herein listed as Federal Defendant(s). Because of these failures and deliberate indifference of the herein listed Federal Defendant(s) — in concert

100

with inmate Defendant Omar Kevir, by allowing and actively participating in the brutal attack and savage beating of Plaintiff -- Plaintiff Williams was forced to endure the Hate Crime Acts each herein listed Defendant conspired to engage in. (See Exhibit 5).

301.  As referred to in the **STATEMENT OF FACTS** of this **Verified Complaint**, said Federal Defendant(s) did nothing to help Plaintiff Williams at the time when their help was most desperately needed.  As a matter of fact, the herein listed Defendant(s) are the reason Plaintiff Williams needed their help.  Yet, in spite of this fact, Plaintiff was ignored by each of them, forced to treat and fend for himself, and as a result, because of the failures and deliberate indifference of the Federal Defendant(s) to Plaintiff's serious medical needs and conditions, and because of the after-effects, as herein articulated, Plaintiff is burdened with pain and suffering for the rest of his life.

302.  As elucidated by the Eighth Circuit in Toombs, the Court clearly stated that, "Toombs alleged he was **not treated** for three weeks although he daily requested treatment, that Nurse Dixon dismissed his grievances in a disparaging manner, that Dr. Bell failed to treat him, and that his condition required gall bladder removal.  These allegations state a claim of deliberate indifference to serious medical needs."  See Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986)(emphasis added).  The named and unnamed Federal Defendant(s) in this Verified COmplaint did the same type of injuries to Plaintiff Williams in the instant case, by repeatedly neglecting the serious medical needs that were requested by Plaintiff and that were medically needed.  This certainly caused Plaintiff prolonged and severe pain and suffering which clearly con-stitutes cruel and unusual punishment that was perpetrated by the herein listed Defendant(s).

303.  In Gamble, it was stated that "An inmate must rely on prison authorities

101

to treat his medical needs; if the authorities fail to do so, these medical needs will not be met.... In less serious cases denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." See Gamble, 429 U.S. at 103-04; Cf. Gregg v. Georgia, supra, at 1731 (joint opinion). The infliction of such unnecessary pain and suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common law view that "it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." See Gamble, supra.

304. Plaintiff Williams would see of this Honorable Court to resolve as an expressed determination of what said Defendant(s) did and did not do to Plaintiff Williams, and declare findings that announce that the deliberate indifference of these Defendant(s) constituted cruel and unusual punishment; or, in the alternative, allow Plaintiff to bring his merits of his claim before a jury for determination. Plaintiff Williams continuously, repeatedly, and deliberately requested of the herein listed Federal Defendant(s), including MDCLA medical staff, to be seen by a doctor, only to have these requests to be ignored or refused over and over again, to the complete detriment and injury to the Plaintiff herein. The instant case is a serious case of deliberate indifference, driven by Hate Crime Acts, resulting in cruel and unusual punishment, in blatant disregard for Plaintiff Williams' Eighth Amendment rights under the Constitution of the United States of America. The facts averred by Plaintiff Williams support this claim and demand that these Defendant(s) be held accountable, and that Plaintiff be awarded the relief requested in this, his Verified Complaint.

305. In Lopez, a case which precisely expresses Plaintiff's claims herein articulated, the Ninth Circuit held that "Prison officials are 'deliberately

indifferent' to a prisoner's serious medical needs when they **deny, delay, or intentionally interfere with medical treatment**; but, mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1123 (9th Cir. 2000)(emphasis added).  Lopez further states that a "Prisoner need not prove that  he [Plaintiff in the instant case] was completely denied medical care in order to recover on 8th Amendment claim, but, rather he can establish interference with his treatment." <u>Lopez</u>, 203 F.3d at 1123.  In the instant case, Plaintiff Williams has established both the complete denial **and** interference of serious medical treatment.  See <u>Id</u>.

306. In the instant case, all listed Federal Defendant(s) were responsible for the health, safety, and welfare of Plaintiff Williams.  The herein listed Federal Defendant(s) blatantly, egregiously, and completely ignored Plaintiff's injuries resulting from the October 7, 2013, brutal attack and savage beating from Defendant Kevir; and the injuries resulting from the January 28, 2014, fall that broke Plaintiff's left femur in three (3) places.  Regarding the October 2013, beating, Plaintiff **never** received **any** medical care or attention from MDCLA  medical staff (See Exhibit 20); instead, Plaintiff Williams was placed in the "SHU" and was forced to treat himself.  Regarding the January 2014, fall, Plaintiff **never** received **any** medical care or attention from MDCLA medical staff (See Exhibit 20); but instead, was dumped into his cell and was left untreated and was forced to live in extremely dehumanizing conditions for over twenty (20) hours.  Both instances caused Plaintiff to endure undue pain and suffering and cruel and unusual punishment; and, herein listed Federal Defendant(s) were deliberately indifferent to Plaintiff Williams' serious medical needs.  Whatsmore, **all** herein listed Defendant(s) perpetrated Hate Crime Acts against Plaintiff in violation of 18 U.S.C. §249 and violated Plaintiff's substantive rights.

307.  "Where prison authorities **deny reasonable requests** for medical treatment and such denial exposes [the] inmate to undue suffering or threat of **tangible residual injury**, deliberate indifference to serious medical need in violation of the Eighth Amendment is manifest." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 327 (3rd Cir. 1987)(emphasis added). Lanzaro is a case clearly demonstrated of the life-long adverse conditions Plaintiff Williams will have subjected upon him by the deeds and misdeeds of the herein listed Defendant(s), where Plaintiff has made a clear and convincing showing of "**tangible residual injury**." Lanzaro, 834 F.2d at 327 (emphasis added).  In addition to Plaintiff's pain and suffering, Plaintiff Williams had to endure unnecessary mental anguish, shame, and humiliation because he was forced to lie in his own urine for a period of over twenty (20) hours. (See Exhibit 5).  The herein listed Federal Defendant(s) are clearly without excuse for their deeds and misdeeds.

308.  Plaintiff Williams seeks **compensatory and punitive** damages in the amount requested herein, in the infra, **PRAYER FOR RELIEF**.

## COUNT II

### PLAINTIFF'S CAUSE OF ACTION AGAINST FEDERAL DEFENDANT(S) FOR MEDICAL NEGLIGENCE THAT VIOLATED PLAINTIFF'S SUBSTANTIVE RIGHTS

309.  Plaintiff re-alleges and incorporates by reference all foregoing averred allegations, claims, and information, as if fully set forth herein, as part of this **Verified Complaint**, **FTCA**, and **Bivens Action**.

310. During all times material hereto, Plaintiff Williams was in the custody of, under the exclusive care of, and under the medical management of the Department of Justice, Federal Bureau of Prisons, at MDCLA; and as agents, actors, and employees of the Federal Government's Bureau of Prisons, the herein

listed Federal Defendant(s) are fully subject to any and all constraint and restrictions imposed by said Defendant(s) upon Plaintiff Williams.

311.    Subsequent to the severe beating Plaintiff received on October 7, 2013, (See Exhibits 4, 5, 6), Plaintiff Williams was in urgent need of critical medical care and treatment while in full custody and control of those very same Federal Defendant(s), particularly inclusive of Warden Thomas, Health Services Administrator De Vasa, Nurse Knight, Dr. Toh, and an untold number of unknown and unnamed Federal agents, actors, and employees, who were all directly responsible for Plaintiff Williams' medical care (**and responsible for the lack thereof**), that was done and not done for Plaintiff; yet, they failed to provide seriously needed medical care and treatment.  See McGuckin, supra. Also, subsequent to a fall on January 28, 2014, Plaintiff was in urgent need of critical medical care and treatment while in full custody and control of those Federal Defendant(s), particularly inclusive of Warden Shinn, Health Services Administrator De Vasa, Dr. Toh, Dr. Sinavsky, Nurse Saulibio, and an untold number of unknown and unnamed Federal agents, actors, and employees, who were all directly responsible for Plaintiff Williams' medical care (**and responsible for the lack thereof**); and these Defendant(s) acted in direct association and in concert with Federal Defendant(s) Unidentified Lieutenant #2, Unidentified Officer #1, Corrections Officer De La Hoyas, Unidentified Officer #2, Unidentified Officer #3, and an untold number of unknown and un-named Federal agents, actors, and employees.  See McGuckin, supra.  These Defendant(s) denied Plaintiff Williams urgently needed medical care and treat-ment for an obvious and "serious" injury, per Gamble, supra, clearly acted with deliberate indifference, and committed Hate Crime Acts, per supra, Farmer, Hearns, Case, Flint.  See also, 18 U.S.C. §249.

312.    The aforementioned named and unnamed Federal Defendant(s) need to

be held responsible for their medical negligence toward Plaintiff Williams. "Complaints alleging constitutional violations must contain specific allegations as to the factual involvement of named defendant[s]." See Bellecourt v. U.S., 784 F. Supp. 623 (D. Minn. 1982). (See also, supra, **STATEMENT OF FACTS**).

313.  During the course of Plaintiff's incarceration at MDCLA, said Federal Defendant(s), unknown and unnamed Federal agents, actors, and employees did -- on two (2) separate occasions -- medically neglect Plaintiff Williams and did injure him through their **medical negligence** and **malpractice** causing injury that could have killed the Complaintant named herein.  Defendant(s) failure to properly examine Plaintiff subsequent to the October 7, 2013, (See Exhibit 4), brutal beating which resulted in serious blunt force injuries about the head -- injuries that went untreated -- was not only cause of Plaintiff to experience undue pain and suffering; but is also the cause of the pain and suffering that Plaintiff Williams experiences to this date.  Because of the herein listed Defendant(s) failure to properly examine Plaintiff subsequent to a January 28, 2014, (See Exhibit 6), fall which resulted in the serious injury of a broken left femur, Plaintiff Williams was forced to lie in excruciating pain, and to suffer needlessly, where, the slightest move could have ended Plaintiff's life in just a matter of minutes.  As articulated herein, the injury resulting from the January 28, 2014, fall is directly related to the resulting injuries of the October 7, 2013, beating Plaintiff received.  The beating happened because Federal Defendant(s) failed to protect Plaintiff from a violent Hate Crime Act.  The inherent negligence in such circumstances has caused permanent debilitating damage that has been saddled with Plaintiff for the rest of his life.

314.  The negligence of named and unnamed MDCLA Federal Defendant(s) is clearly split between the two (2) occasions where Plaintiff Williams was

106

injured, and where failure to do the proper examination and diagnosis of serious medical needs was deterimental to Plaintiff Williams. Part of this negligence rests with the named Defendant(s), including MDCLA medical staff, for the October 2013, injuries; while, part of the negligence rests with MDCLA medical, and other MDCLA staff, for the January 2014, injuries; and where on both occasions MDCLA medical staff did nothing to treat Plaintiff. "[R]outinely prescribing nothing more than pain killers when a thorough diagnosis would disclose an obvious need for remedial treatment," would axiomatically constitute medical negligence. See Gamble, 429 U.S. at 264. Ironically, in fact and indeed, Plaintiff Williams was not even given "pain killers" for his serious medical needs. See Gamble, supra.

315. As a result of listed Federal Defendant(s) medical negligence, along with utilizing unskilled medical staff, the lack of treatment of Plaintiff Williams' serious medical conditions (incidents and injuries of October 7, 2013, and January 28, 2014) is clearly indicative of a concrete tort injury. "When **officials become aware of a threat to an inmate's health and safety**, the Eighth Amendment's proscription against cruel and unusual punishment imposes a **duty to provide reasonable protection against cruel and unusual punishment** and imposes a duty to provide reasonable protection.... Prison officials must have been deliberately indifferent to a **known danger** before we can say that their failure to intervene offended 'evolving standards of decency,' thereby raising to the level of **constitutional tort [violations]**. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)(citations omitted, emphasis added). See also, supra, **STATEMENT OF FACTS**.

316. Each time Plaintiff Williams was injured, the Defendant(s) medical negligence removed the possibility of Plaintiff being correctly diagnosed, negating a simple treatment and burdening Plaintiff Williams with life-long

conditions, where he will most constantly be concerned about what the beating did to his brain, and what the broken femur did if he were to fall again. Early and correct diagnoses would have mitigated the permanent effects Plaintiff has been left to endure because of the medical negligence of these Federal Defendant(s).

317. Plaintiff's FTCA grounds are cognizable under the Tort Claims Act, which states that a claim must arise from the negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b); Sheridan v. U.S., 487 U.S. 392, 398 (1988). The acts and omissions averred in this Verified Complaint occurred in California and, therefore, California law applies to Plaintiff's claims of medical negligence. Cf., Banderas v. U.S., 2012 U.S. Dist. Lexis 74782, CV 08-6594 PSG (CTx) (C.D. Cal. 2012).

318. In California, a plaintiff asserting a claim of medical negligence must establish the following elements: "(a) a legal duty to use due care: (b) a breach of such duty; (c) the breach as the proximate or legal cause of the resulting injury." Ladd v. County of San Mateo, 12 Cal. 4th 913, 917, 50 Cal. Rptr. 2d 309, 911 P 2d 496 (1996) (quotation marks omitted. A physician is negligent if he or she fails to use the level of skill, knowledge, and care in the diagnosis and treatment that other reasonably careful physicians would use in the same or similar circumstances. See Mann v. Crachiold, 38 Cal. 3d 18, 36, 210 Cal Rptr. 762, 694 P 2d 1134 (1985).

319. Medical negligence claims in California are typically subject to the Medical Injury COmpensation Reform Act ("MICRA"). See Hoffman v. U.S., 767 F.2d 1431, 1433 (9th Cir. 1985). MICRA usually places a $250,000 cap

on non-economic damages in "an action for injury against a health care pro-
vider based on professional negligence." Cal.Civ.Code §3333.2(b).   The
statute defines professional negligence in relevant part, as "a negligent act
of omission to act by a health care provider in the rendering of professional
services, which act or omission is the proximate cause of a personal injury
or wrongful death."  Cal.Civ.Code §3333.2(c)(1).  While the California Supreme
Court has not squarely addressed whether non-economic damages stemming from
intentional conduct that occurs in the course of providing medical services
could be capped under MICRA.  See Barris v. County of Los Angeles, 20 Cal. 4th
101, 115, 83 Cal Rptr. 2d 45 (1999)(declining to address the issue).  Several
Districts of the California Court of Appeals have held that **NICRA does not**
**apply to intentional conduct.**  See Perry v. Shaw, 88 Cal. App. 4th 658, 668,
106 Cal. Rptr. 2d 70 (2001)(holding MICRA limitations did not apply to a claim
for battery stemming from medical procedures); Unruh-Haxton v. Regents of  Univ.
of Cal., 162 Cal. App. 4th 343m 355-56, 76 Cal. Rptr. 3d 146 (2008)(holding
MICRA's statute of limitations did not apply to claims of fraud, conversion,
and IIED related to wrongful intentional conduct in a medical procedure).

    320.  Herein listed Federal Defendant(s) wantonly, deliberately, and
intentionally injured Plaintiff Williams.  This fact is bore out, and explicated
most clearly, by the failure of said Defendant(s) to provide Plaintiff with any
medical attention or care whatsoever.  This fact is further evidenced by
altered medical records regarding the savage beating MDCLA Federal Defendant(s)
allowed and participated in on October 7, 2013, (See Exhibits 4, 5); and by
the **lack** of med**ical reco**rds regarding the serious injury Plaintiff received on
January 28, 2014.  Plaintiff had repeatedly begged to be seen by a doctor, on
both occasions, but the repeated requests were denied by MDCLA medical staff.
(See supra, **statement of facts.**  See also, Exhibits 17, 18).  This medical

document regarding one serious medical need, and the **lack** of a medical document regarding another serious medical need, clearly evinces the fact and extent of which injuries were known to MDCLA medical personnel, as Defendant(s), and other Defendant(s), hid known facts, and that **they did nothing**, offered no medical treatment, and no type of resolution sought whatsoever in one instance, and for over twenty (20) hours in the other, for Plaintiff's serious medical conditions.  Clearly, in light of the foregoing, the actions and omissions of herein listed Federal Defendant(s) were **deliberate indifference.**

321.  Furthermore, Plaintiff Williams cannot possibly begin to adequately describe the amount of Intentional Infliction of Emotional Distress ("IIED""), that he was forced to endure resulting from the cruel and unusual punishment he was subjected to by the herein listed Federal Defendant(s).  The emotional and psychological anguish is beyond description.  IIED has been exacerbated by the humiliating and dehumanizing conditions Plaintiff was forced to endure because of the deliberate and intentional actions of the herein listed Federal Defendant(s).  On two (2) separate occasions Plaintiff literally thought that he was going to die; and because he was under the complete custody and control of the Federal Bureau of Prisons, was helpless to do anything about either condition.  Plaintiff never in his life has had a feeling of complete and utter hopelessness and despair that he was subjected to at the hands of the herein listed Federal Defendant(s).  Plaintiff Williams believes he suffers from Post Traumatic Stress Disorder ("PTSD") because of the inhumane conditions of fear and anguish and pain and suffering and help-lessness to which he was subjected while in Federal Bureau of Prisons custody and control at MDCLA.  The actions and omissions of the herein listed Federal Defendant(s) were clearly **intentional.**

322,  Plaintiff Williams would point out that the Jury, in a trial setting

of these issues, could properly determine the factual circumstances of the herein listed Federal Defendant(s) medical negligence, even if said Jury members did not hear the testimony of expert witnesses on the subject. "A reasonable juror could determine that a misdiagnosis involves negligent or wrongful conduct without the aid of expert testimony. In certain rare circumstances, expert testimony is not necessary in a medical negligence case because the alleged acts of negligence clearly lie within the range of the jury's common knowledge and experience." Harvey v. U.S., 685 F.3d 939 (10th Cir. 2012).

323. In conspectus of **COUNT II**, Plaintiff Williams would state he has made more than an adequate showing for relief under the FTCA. The Federal Defendant(s) malicious and **deliberate** and **intentional** actions warrant the relief sought by Plaintiff Williams in his infra **PRAYER FOR RELIEF**. Therefore, pursuant to the foregoing negligent acts and/or omissions of said Defendant(s), Plaintiff Williams demands that these issues be brought before a jury for determination in a trial setting.

## COUNT III

### PLAINTIFF'S CAUSE OF ACTION AGAINST FEDERAL DEFENDANT(S) FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN VIOLATION OF PLAINTIFF'S SUBSTANTIVE RIGHTS WITH SUPPORTING AUTHORITIES

324. Due to the time, delay, and the intentional nature of the herein listed Federal Defendant(s) injuring Plaintiff Williams by their deliberate indifference, medical negligence, and cruel and unusual punishment, said Defendant(s) are clearly the actual and proximate cause for the Intentional Infliction of Emotional Distress ("IIED") Plaintiff was subjected to. The IIED that Plaintiff Williams was subjected to -- IIED issues Plaintiff still

111

experiences -- is by far beyond the English language to adequately express.

325.   To establish a claim for IIED, a Plaintiff must prove the following: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050-51, 95 Cal. Rptr. 3d 636, 209 P 3d 963 (2009)(quotation marks omitted).

326.   Regarding the first element, a Defendant's conduct is outrageous when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." See Id. at 1051. The Defendant's conduct must also be "intended to inflict injury or engaged in the realization that injury will result." See Id. In determining outrageousness, the following factors must be considered: whether Defendant(s) "(1) abuses a relation of position that gives him power to damage plaintiff's interests; (2) knows the plaintiff is susceptible to injuries through mental distress; (3) acts intentionally or unreasonable with the recognition that the acts are likely to result in illness through mental distress." Molko v. Holy Spirit Ass'n, 46 Cal. 3d 1092, 1122, 252 Cal. Rptr. 122, 762 P 2d 46 (1988)(quotation marks omitted), superseded by statute on other grounds as stated in 25 Cal. 4th 862, 107 Cal Rptr. 2d 841, 24 P 3d 493. Additionally, under the first element of IIED, a Defendant may be found to have acted with reckless disregard in causing a Plaintiff emotional distress is a Defendant "devoted little or no thought to [the] probable consequences to his [or her] conduct." See KVOR-TV, Inc. c. Super. Ct., 31 Cal. App. 4th 1023, 1031-32, 37 Cal. Rptr. 2d 431 (1995).

327.   For the second element of IIED, severe emotional distress has been defined as "emotional distress of such substantial quantity of enduring quality

that no reasonable man in a civilized society **should be expected to endure it."** Girard v. Bell, 125 Cal. App. 3d 772, 788, 178 Cal. Rptr. 406 (1981)(emphasis added.

328.  A FTCA claim for IIED may be brought under this Act.  Only certain intentional torts may not be brought under this Act.  However, IIED is not one of these precluded torts.  Precluded torts are expressly limited to the following: "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract right."  See 28 U.S.C. §2680(h).  In Sheehan, the Ninth Circuit has explained an IIED claim may be pursued under the FTCA when the claim does not arise out of any of the above enumerated torts.  Sheehan v. U.S., 896 F.2s 1168, 1172 (9th Cir. 1992).  As the claims articulated herein show, Plaintiff's IIED claim does not arise from assault or battery or any of the other pre-cluded torts under 28 U.S.C. §2680(h).

329.  The purposeful actions of the herein listed Federal Defendant(s) clearly satisfies a showing of IIED.  On two (2) separate occasions —— the October 7, 2013, beating by Defendant Omar Kevir, and the broken left femur on January 28, 2014 —— Plaintiff, while at MDCLA, was forced to lie in a bed while seriously injured, was unable to move, was forced to contemplate, fret, worry, and obsess over whether he would live or die.  Because of the serious injuries sustained, on both occasions Plaintiff actually thought he was going to die because he hurt so badly —— all the while sitting helpless, unable to help himself; while begging and pleading for help from Bureau of Prison em-ployees/officers and medical staff at MDCLA that had acted with intentional indifference, and considering the real possibility that he would not ever see his family again.  This IIED surely is not tolerated in today's society, and is indicative of the overall arching intentions of those herein named and

113

unnamed Federal Defendant(s).    Whatsmore, Plaintiff's conditions have dig-

ressed farther into an abyss of physical deterioration further exasperating

his mental and emotional anguish.    To be sure, this type of treatment of an

inmate serves no penological purpose.    Also, to be sure, the pain and suffering,

the cruel and unusual punishment, and the Hate Crime Acts Plaintiff was forced

to endure, by the very people who had a lawful duty to **protect** Plaintiff from

the acts of intentional indifference they themselves -- the herein listed

Federal Defendant(s) -- have inflicted upon Plaintiff, could have been avoided.

For the reasons articulated herein, Plaintiff Williams seeks compensatory and

punitive damages in the amount sought in Plaintiff's **PRAYER FOR RELIEF**.

### COUNT    IV

**PLAINTIFF'S CAUSE OF ACTION AGAINST LISTED DEFENDANT(S)
FOR CONSPIRING IN A RICO ENTERPRISE TO PERPETRATE ACTS
OF RACKETEERING COMPRISING OF ATTEMPTED MURDER, EXTORTION,
INTERFERENCE OF INTERSTATE SHIPMENTS, OBSTRUCTION OF
JUSTICE, WIRE FRAUD, MAIL FRAUD, AND HATE CRIME ACTS**

330.  Plaintiff Williams re-alleges, re-asserts, and reclaims each and

every claim giving rise to this cause of action, as articulated herein, as if

fully incorporated herein and fully set forth by reverence **in haex verba**, as

part of Plaintiff's **Verified Complaint**.

331.  At all times material hereto, Plaintiff Williams was subjected to

the perpetration of predicate acts and/or omissions of a RICO Enterprise con-

spiracy orchestrated by the herein listed Federal Defendant(s) and the herein

listed inmate (civilian) Defendant to willfully, maliciously, intentionally,

and wantonly harass and injure Plaintiff Williams resulting in the permanent

health conditions to which he is currently subjected.

332.  Several of the predicate RICO acts of racketeering, which give rise

to this **Verified Complaint**, and as averred inter alia, **STATEMENT OF FACTS**,

are as follows:

    (a). Attempted Murder;
    (b). Extortion;
    (c). Interference of Interstate Shipments;
    (d). Obstruction of Justice;
    (e). Wire Fraud;
    (f). Mail Fraud; and
    (g). Hate Crime Acts.

333. Pursuant to Federal Rule of Civil Procedure – Rule 9, Plaintiff's predicate acts are pleaded with particularity as required to plead RICO conspiracies with specificity. Plaintiff Williams has clearly demonstrated and articulated the **who, what, where, when,** and **why** elements for each circumstance.

334. The RICO Act allows a private citizen to recover damages for conduct of an enterprise through a pattern of racketeering activity, per 18 U.S.C. §1961, et seq. Cf. 18 U.S.C. §1964(c):

> "Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 U.S.C. §1962] may sue therefor in any appropriate United States District Court and shall recover **threefold** the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been accountable as fraud in the purchase or sale of securities to establish a violation of section 1962 [18 U.S.C. §1962]. The exception contained in  the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final." (emphasis added).

335. Moreover, as demonstrated by Plaintiff Williams, the requisite two (2) predicate acts of racketeering activity has satisfied the U.S. Supreme Court precedent, as established in N. J. Inc., 492 U.S. at 237. Further, Plaintiff Williams has demonstrated that the two (2) or more acts are "interrelated by distinguishing characteristics...[, and] are not isolated events." See Id. at 239-40; and clearly "amount to or pose a threat to continued criminal activity." See Id. at 239.

336. In fact and indeed, Plaintiff Williams has satisfied the five

elements of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's business or property." See Living Designs, Inc., 431 F.3d at 361. Additionally, Plaintiff has "show[n] that the racketeering predicates are related [to each other] and that they amount to or pose a threat of continued criminal activity." See H. J. Inc., 492 U.S. at 239; Cf. Sanford v. Member Works Inc., 625 F.3d 550, 557 (9th Cir. 2010)(a plaintiff must show two or more acts constituting a pattern).

337.  Plaintiff Williams seeks the **treble** damages sought in his **PRAYER FOR RELIEF.**

## COUNT    V

### PLAINTIFF'S CAUSE OF ACTION AGAINST FEDERAL DEFENDANT(S) FAILURE TO PROTECT PLAINTIFF BY ALLOWING VIOLENT ACTS BY A FEDERAL INMATE RESULTING IN CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF PLAINTIFF'S SUBSTANTIVE RIGHTS, DELIBERATE INDIFFERENCE, AND HATE CRIME ACTS WITH SUPPORTING AUTHORITIES

338.  Plaintiff Williams re-alleges, re-asserts, and reclaims each and every claim giving rise to this cause of action, as articulated herein, as if fully incorporated herein, and fully set forth by reference **in haec verba**, as part of Plaintiff's **Verified Complaint.**

339.  At all times material hereto, Plaintiff Williams was subjected to cruel and unusual punishment, deliberate indifference, and Hate Crime Acts by the herein listed Defendant(s) failure to protect Plaintiff and by allowing inmate Defendant, Omar Kevir, to commit the furtherance of a Hate Crime Act against Plaintiff.  Plaintiff Williams was under the exclusive care and custody of the Federal Bureau of Prisons at MDCLA, and without the requisite liberty to access alternative health care services or providers; was arbitrarily denied the required medical examination by competent medical personal at

116

MDCLA on two (2) separate occasions; and was willfully and intentionally deprived of not only protection, but of normal and humane medical treatment, procedures, and conditions.

340. Named and unnamed MDCLA officials, including Warden Thomas, and in particular Captain Morales, "knew of and disregard[ed] an excessive risk to [Plaintiff Williams'] ...safety." See Farmer, 511 U.S. at 837; see also, e.g., Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 84 (6th Cir. 1995); Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995).

341. Named and unnamed MDCLA officials, including Warden Thomas, and in particular Captain Morales, completely disregarded a risk that was clearly "excessive" and one that posed a "substantial risk of serious harm." See Farmer, 511 U.S. at 837; see also, Berry v. City of Muskogee, 900 F.2d 1489, 1496 (10th Cir. 1990)(risk that is "very likely to result in a violation of a prisoner's constitutional rights'); Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)("'a strong likelihood rather than a mere possibility' of injury"); Frett v. Government of Virgin Islands, 839 F.2d 968, 978 (3rd Cir. 1988)(risk "of such a nature and degree that to disregard it was a gross deviation from a standard of care a corrections officer should have exercised in the situation"); Morgan v. District of Columbia, 824 F.2d 1049, 1058 (D.C. Cir. 1987)9"obvious unreasonable risk of violent harm"); Pressley v. Hutto, 816 F.2d, 977, 979 (4th Cir. 1987)("real and imminent risk of harm").

342. Federal Defendant Captain Morales was in possession of a **written death threat** against Plaintiff Williams that was written by inmate Defendant Omar Kevir. All MDCLA staff, including Federal Defendant(s) Thomas, Corrections Officer Young, Proctor, and Unidentified Lieutenant #1, knew or should have known of this written death threat and should have protected Plaintiff Williams. Having knowledge of and possession of a written death

threat, Captian Morales spoke to all inmates in the housing unit, and specifically spoke to Plaintiff Williams in regards to this threat, promising Plaintiff that MDCLA staff would protect him. MDCLA staff **did not** protect Plaintiff Williams **and** MDCLA staff **did not**, on two (2) separate occasions, provide appropriate medical care.

343. Plaintiff Williams specifically, out of fear for his safety and well being -- and his life, requested that Kevir be moved. However, Defendant Kevir was not moved. Plaintiff repeatedly told MDCLA staff of his concerns for his personal safety and well being and these repeated requests were ignored. MDCLA staff **did not** listen to Plaintiff's pleas; MDCLA staff **did nothing** to protect Plaintiff Williams. Measures that are not reasonably calculated to ensure safety from violence **do not** satisfy the obligation to protect an inmate from violence. See Riley v. Olk-Long, 282 F.3d 592, 597 (8th Cir. 2002)(actions that are "not adequate given the known risk" do not defeat liability). MDCLA's response to the "excessive" "known Risk" was to do nothing except empower Defendant Omar Kevir to inflict great bodily harm against Plaintiff Williams.

344. Whatsmore, refusing to place a prisoner in protective custody -- vis-a-vis, remove the threat -- constitutes deliberate indifference. Hamilton v. Leavy, 117 F.3d 742, 748 (3rd Cir. 1997)(holding failure of officials to place plaintiff in protective custody promptly after an officer told other inmates he was a snitch could be deliberate indifference); Hutchinson v. McCabee, 168 F. Supp 2d 101, 103 (S.D.N.Y. 2001)(evidence would support finding that officials should at least have offered protection while investigating prisoner's account of threat). In case sub judice, it was Captain Morales who had possession of a written death threat; it was Captain Morales who was investigating the threat made against Plaintiff Williams -- the threat that he **and** MDCLA staff had knowledge of; it was Captain Morales who told Plaintiff

that MDCLA staff would protect him; it was Captain Morales who did not move Defendant Kevir out of the housing unit that Plaintiff was assigned to; it was Captain Morales who did not offer protective custody to Plaintiff; and it was Captain Morales, in concert with other civil RICO Enterprise co-conspirators who allowed and encouraged and empowered inmate Defendant Omar Kevir to savagely beat Plaintiff. These acts and/or omissions, by the herein listed Federal Defendant(s), clearly establishes deliberate indifference.

345. Because of the deliberate indifference acts perpetrated by the herein listed Federal Defendant(s), Plaintiff Williams was deprived serious medical needs. The Supreme Court has held that a "serious medical need exists if the failure to treat a prisoner's condition would result in further significant injury" or the "unnecessary and wanton infliction of pain." See Gamble, 429 U.S. at 104. This precedent illustrates Plaintiff's factual circumstances perfectly. On two (2) separate occasions Plaintiff was forced to suffer excruciating and debilitating pain; and was forced to suffer inhumane, humiliating, and potential death for over twenty (20) hours.

346. Without the manipulation of herein listed Federal and private actors, acting in concert and conspiring with one another to injure, and an attempt to murder Plaintiff Williams, Plaintiff could have had his health conditions easily fixed in their respective early stages with normal, standard, prompt, and competent health care practices; and could have done so **without** inflicting unnecessary pain and suffering and permanent, life-long damage.

347. In light of the foregoing, Plaintiff Williams seeks **compensatory and punitive damages** in the amount requested in the infra **PRAYER FOR RELIEF**.

## COUNT    VI

**PLAINTIFF'S CAUSE OF ACTION AGAINST DIVERSE DEFENDANT(S) FOR CRUEL AND UNUSUAL PUNISHMENT, DELIBERATE INDIFFERENCE, IIED, MEDICAL NEGLIGENCE, CONSPIRACY, AND BREACH OF FIDUCIARY DUTY**

348.  Plaintiff Williams re-alleges the allegations, claims, and information averred herein, as if fully set forth and incorporated **in haec verba,** as part of Plaintiff's **VERIFIED COMPLAINT.**

349.  During all times material hereto, Plaintiff Williams was in the custody, and under the exclusive care and medical management of the Federal Bureau of prisons,  at MDCLA, by and through the herein listed Federal Defendant(s), where said Defendant(s) being of diverse citizenship to Plaintiff, under 28 U.S.C. §1332, conspired to subject Plaintiff Williams to cruel and unusual punishment, by way of acts of deliberate indifference, IIED, medical negligence, and breach of fiduciary duty.

350.  As fully set forth in Plaintiff's Statement of Facts, and through other averments with this **VERIFIED COMPLAINT,** these Federal Defendant(s) of diverse citizenship, by the colorable authority vested in them to house Federal inmates, purposefully injured Plaintiff Williams at the command and direction of Defendant(s) Captain Morales, Nurse Saulibio, and Corrections Officer Young. The end-result of the negligence and acts of deliberate indifference was the injuries that give rise to this **VERIFIED COMPLAINT.**

351.  Because of the actions of the herein listed Federal Defendant(s), Plaintiff Williams seeks **compensatory and punitive damages** in the amount requested in the infra, **PRAYER FOR RELIEF.**

## COUNT    VII

### PLAINTIFF'S CAUSE OF ACTION AGAINST PRIVATE DEFENDANT WHO ENTERED INTO A CONSPIRACY FOR THE PURPOSE OF INJURING PLAINTIFF WILLIAMS

352.  Plaintiff Williams re-alleges, re-asserts, and reclaims each and every claim giving rise to this cause of action, as articulated herein, as if fully incorporated herein and fully set forth by reference **in haec verba,**

as part of Plaintiff's **VERIFIED COMPLAINT.**

353. At all times material hereto, Defendant **OMAR KEVIR** conspired with federal actors, herein listed as Federal Defendant(s), to injure Plaintiff Williams.

354. The acts and/or omissions of this Defendant -- **OMAR KEVIR** -- substantially assisted other co-conspirators to injure, harass, defraud, obstruction of justice, and attempted murder.

355. As a result of the actions of Defendant **OMAR KEVIR**, Plaintiff Williams seeks **compensatory and punitive damages** in the amount and kind requested in Plaintiff's **PRAYER FOR RELIEF.**

## XX.    COMPLAINT SUMMATION

356. In summation of Plaintiff Williams' **VERIFIED COMPLAINT**, which consists of Bivens, 42 U.S.C. §1983, 28 U.S.C. §1332, Civil RICO under 18 U.S.C. §1961 et seq., and FTCA under 28 U.S.C. §2671 - §2680, the undersigned has expressed, with particularity, the heinous nature of the acts and/or omissions fo the conspirators herein identified. Federal persons, known and unknown, each having been placed within the public's trust or having a fiduciary duty to always do the right thing, purposefully -- in the most egregious manner -- conspired with a private person -- inmate Omar Kevir -- to injure, harass, vex, extort, commit fraud, attempted murder, and did organize a criminal Civil RICO Enterprise to do the same against the undersigned Plaintiff Williams.

357. Special emphasis is merited in Plaintiff Williams' claims herein averred, as the factual circumstances to which Plaintiff was subjected to at the hands of Federal officials/officers/actors/employees -- in concert with a civilian actor -- hold a considerable interest to the public at large. These actions perpetrated against  Plaintiff Williams must be thoroughly scrutinized

and litigated in a competent court of law to ascertain the ramifications of having a rogue element of the Federal Government existing in public service.

358.  As exhaustively plead within this **VERIFIED COMPLAINT**, Plaintiff Williams has pleaded facts sufficient to make a valid demonstration of the existence of a RICO Enterprise and acts of racketeering activity by each of the herein listed Defendant(s).  This is a public problem of immense proportions, thus, warranting the special attention of this Honorable Court. The United States of America ia a Nation of law; and, without law, anarchy would reign.

359.  As a Nation of law, the Constitution of the United States of America has consistently been determined to be the supreme law of the land -- "The Supremacy Clause" -- therefore, the government conspirators who broke their solemn Oath and sacred promise to support and defend that instrument have committed treason against that most sacred charter.  Such an egregious breach of duty to the public and the Constitution of the United States demands that Plaintiff Williams receive the relief requested in full, inclusive of treble damages under RICO.

360.  Plaintiff Williams wishes to again express that the herein listed Defendant(s) were **blatantly, intentionally,** and **purposefully deliberately indifferent** and **medically negligent,** and further violated their Oath(s) of office by violating the Eighth Amendment's proscription against **cruel and unusual punishment.**  The Plaintiff has made a requisite showing throughout this, his **VERIFIED COMPLAINT,** demonstrating the **who, what, when, where, why,** and **how,** that clearly demands the remedy sought herein.  In fact and indeed, Plaintiff Williams has made a non-conclusory showing that the enumerated Defendant(s) caused, and aggravated, serious injuries -- a brutal beating by Defendant inmate Omar Kevir and a broken left femur -- through their **intentional**

122

medical negligence and deliberate indifference that demonstrates an intent to commit murder **and** Hate Crime Acts.  Outrageously, MDCLA staff placed Plaintiff Williams in the "SHU" after inmate Defendant Kevir brutally beat Plaintiff after MDCLA Administrators had knowledge that Plaintiff's safety was at risk. Plaintiff Williams was placed in the "SHU" without any medical treatment whatsoever.  Equally outrageously, Plaintiff Williams was medically neglected, without any medical treatment whatsoever, for over twenty (20) hours after his left femur was broken; was left again to fend for himself, and was forced to lie in his own urine.  By simply doing the right thing, by simply performing their respective supervisory and medical duties within an objective standard of reasonableness, Plaintiff Williams **would not** have been subjected to **cruel and unusual punishment**, including life-threatening medical situations.  (See supra, **STATEMENT OF FACTS**, ¶¶ 64-146).

361.  "The government has an obligation to provide medical care for those whom it punished by incarceration," and cannot act with deliberate indifference to the medical needs of its prisoners.  See Estelle v. Gamble, supra.  "The appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"  See Hudson v. McMillian, 112 S.Ct. 995, 998 (1992).  The "unnecessary and wanton infliction of pain" upon incarcerated individuals under color of law constitutes, inter alia, a violation of the Eighth Amendment.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

362.  The herein listed Defendant(s) wantonly and intentionally refused appropriate treatment for injuries resulting from the October 7, 2013, brutal beating Plaintiff received at the hands of inmate Defendant Omar Kevir.  The herein listed Defendant(s) also wantonly and intentionally delayed treatment of Plaintiff's broken left femur, as described in detail in Casey v. Lewis,

834 F. Supp. 1569, 1583 (9th Cir. 1993), which states "A delay in treatment does not constitute a violation of the Eighth Amendment unless the delay caused substantial harm. In cases which the system's constitutionality is at issue, deliberate indifference to the serious medical needs of prisoners may also be evidenced by repeated examples by the medical staff or by proving there are such systemic and gross defficiencies...." (See evidence on point in Plaintiff's **STATEMENT OF FACTS**, supra, ¶¶ 64-146).

363. These same listed Defendant(s) wantonly and intentionally failed to protect Plaintiff Williams from a brutal attack. Those very same listed Defendant(s) also wantonly and intentionally committed Hate Crime Acts against Plaintiff Williams by allowing inmate Defendant Omar Kevir to perpetrate a Hate Crime Act against Plaintiff Williams.

364. "In order to establish medical negligence, the plaintiff must show that (1) the health care provider failed to exercise the same degree of care and skill expected of a prudent health care provider in the same or similar circumstances, and (2) such failure was a proximate cause of the injury." See Mathis v. U.S., 2011 U.S. Dist. Lexis 106094 (9th Cir.). "Whether or not those were negligent acts beyond misdiagnosis, they are all part of a failure to treat adequately." Ward v. U.S., 1992 U.S. Dist. Lexis 20092 (9th Cir.). In the instant case, the named and unnamed Federal Defendant(s) were most certainly acting with wanton and intentional **deliberate indifference**, **medical negligence**, **IIED**, and said intentional actions and/or omissions clearly constitute **cruel and unusual punishment**.

365. Herein, throughout this **verified complaint**, Plaintiff Williams has articulated facts that, by far, exceed the requirements of establishing **deliberate indifference, medical negligence, IIED, and Hate Crime Acts**. If the factual circumstances, as herein articulated, are not verifiably true,

must Plaintiff Williams is flabbergasted, and at a loss for words as to what would actually qualify to satisfy the foregoing elements, if his particularized situations do not meet the criteria for the foregoing forms of egregious injuries.

366.  What happened to Plaintiff Williams, as articulated throughout the instant **VERIFIED COMPLAINT**, should not **ever** happen to **any** inmate incarcerated within **any** Federal institution, much less even to a regular citizen out on the street, simply because the actions and/or omissions of the herein listed Defendant(s) was so inhumane; and because it is absolutely inappropriate that no human being should have to go through so much pain and suffering.

367.  The Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care.  Prison officials show **deliberate indifference to serious medical needs** if prisoners are unable to make their medical problems known to medical staff...Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoner's problems.  The medical staff must be competent to examine prisoners and diagnose [serious injuries or] illnesses.  It must be able to treat medical problems or to **refer prisoners to others who can.**  Such referrals may be to other physicians within the prison, **or to physicians or facilities outside the prison if there is reasonably speedy access to these other physicians or facilities.**  In keeping with these requirements, the prison must provide an adequate system for responding to emergencies promptly and adequately, then the prison must provide adequate facilities and staff to handle emergencies within the prison.  These requirements apply to physical, dental, and mental health issues.

368.  The herein listed Defendant(s) knew that their actions of intentionally inflicting deliberate indifference, criminal medical neglect,

IIED, and willfully depriving Plaintiff Williams of urgently needed medical care is torturous  conduct that is not tolerated within a civilized society. In fact and indeed, such treatment of an animal is criminal conduct in every part of this great nation.  The Defendant(s) knew or should have known that they were the sole source of safety and medical care available for an in-carcerated individual, and still engaged in a deliberate and concerted effort to intentionally deny Plaintiff Williams the much needed protection, much needed urgent medical attention and care, and not only allowed, but were also directly involved in Hate Crime Acts against Plaintiff Williams.

369.  This honorable Court is a tribunal of justice, established by **we the people** to to ensure that guilty parties never go unpunished.  Herein, Plaintiff Williams has made a clear showing of the guilt of named and unnamed Federal and private Defendant(s).  A clear message must be sent to anyone in a position of trust and/or authority who does not take their Oath of Office as a solemn pledge to do right as an implicit promise to the American people, who are the source of the sovereign power delegated to Government to do their will -- a power that is given at their pleasure.

370.  Therefore, Plaintiff Williams again respectfully requests the in-dulgence  of this Honorable Court to follow formally cited court precedent regarding **pro se** Prisoner – Plaintiff litigants  and Plaintiff further requests that this Honorable Court  honors the **expedited** nature of this **VERIFIED COMPLAINT**.  Additionally, "Once in forma pauperis plaintiff raises cognizable Eighth Amendment claim of denial of medical treatment, [the] District Court cannot dismiss it **sua sponte**, under 28 U.S.C. §1915, for lack of details." See Nance v. Kelley, 912 F.2d 605 (2nd Cir. 1990).

126

## XXI.    CONDITIONS TO RESPOND

371.  Plaintiff Williams is averring each of his claims in this **VERIFIED COMPLAINT** under penalty of perjury.  THerefore, it is requested that the herein listed Defendant(s) respond in kind.   Equality under the law is paramount and mandatory.  Further, Plaintiff Williams requests that the Defendant(s) answer each and every numbered paragraph within this **VERIFIED COMPLAINT,** and substantiates their (the Defendant(s)) answers with certified copies of any documents and evidence to support said answer to this **VERIFIED COMPLAINT.**  Failure to respond as outlined herein shall represent default, and Defendant(s) covenant and agree to self-executing confession of judgment in the event that said Defendant(s) fail to answer as outlined herein. Axiomatically, every claim that the Defendant(s) fail to answer or other-wise defend against is acquiesced and deemed by such acquiescence  as true and correct; and thus, Plaintiff Williams is thereby confessed as being entitled to the relief requested herein as a matter of law.

## XXII.    FINDINGS OF FACT AND CONCLUSIONS OF LAW REQUESTED

372.  Plaintiff Williams respectfully requests that any **ORDER** or determination given by this Honorable Court include **written findings of fact and conclusions of law,** to enable Plaintiff Williams to adequately develop the record for any meritorious purpose, or, to ensure an adequately developed record for the purpose of any appeal right that Plaintiff Williams may need to subsequently pursue.

## XXIII.    PRAECIPE FOR EXPEDITED PROCEEDINGS

373.  Plaintiff Williams further requests that this Honorable Court pro-ceed in an expeditious  manner through screening, service, and proceedings.

## XXIV.    PRAYER FOR RELIEF

374. **WHEREFORE**, premises considered, Plaintiff Williams hereby prays that this Honorable Court **GRANT** and **ORDER** the following as forms of relief:

### COUNT    I

375. As to **COUNT I,** Plaintiff demands judgment for relief against the above enumerated Defendant(s) in an amount not less than Ten Million U.S. Dollars ($10,000,000.00) awarded against **each Defendant**, plus costs and any other relief to which Plaintiff may be entitled, including attorney fees; in addition to Medical Expenses for as long as needed for Plaintiff's medical conditions. Further, Plaintiff seeks punitive damages in the amount three (3) times that awarded as compensatory damages, in an amount not less than Thirty Million U.S. Dollars ($30,000,000.00), plus treble the amount of any additional fees that may be awarded. (Bevins Claims).

### COUNT    II

376. As to **COUNT II,** Plaintiff demands judgment for relief against the above enumerated Defendant -- **The United States of America** -- in tort damages in the amount of Ten Million U.S. Dollars ($10,000,000.00) awarded against said Defendant, the United States of America, plus costs of any other relief to which Plaintiff may be entitled, including attorney fees; in addition to Medical Expenses for as long as needed for Plaintiff's medical conditions. (FTCA Claim).

### COUNT    III

377. As to **COUNT III,** Plaintiff demands judgment for relief against the above enumerated Defendant -- **The United States of America** -- in tort damages

in the amount of Ten Million U.S. Dollars ($10,000,000.00) awarded against said Defendant, the United States of America, plus costs and any other relief to which Plaintiff may be entitled, including attorney fees; in addition to Medical Expenses for as long as needed for Plaintiff's medical conditions. (FTCA Claim).

## COUNT    IV

378.  As to **COUNT IV**, Plaintiff demands judgment for relief against **all named and unnamed Defendant(s)** for relief in an amount not less than Ten Million U.S. Dollars ($10,000,000.00), and **treble damages** thereupon, awarded against **each Defendant** jointly and severally, plus costs and any other relief to which Plaintiff may be entitled, including attorney fees; in addition to Medical Expenses for as long as needed for Plaintiff's medical conditions.

## COUNT    V

379.  As to **COUNT V**, Plaintiff demands judgment for relief against **all named and unnamed Defendant(s)** for relief in an amount not less than Ten Million U.S. Dollars ($10,000,000.00), and punitive damages in the amount of not less than Ten Million U.S. Dollars ($10,000,000.00), plus costs and any other relief to which Plaintiff may be entitled, including attorney fees; in addition to Medical Expenses for as long as needed for Plaintiff's medical conditions.

## COUNT    VI

380.  As to **COUNT VI**, Plaintiff demands judgment for relief against all the above enumerated Defendant(s) in an amount not less than Ten Million U.S. Dollars ($10,000,000.00), and punitive damages not less than Ten Million U.S. Dollars ($10,000,000.00), awarded against **each Defendant**, plus costs and

any other relief to which Plaintiff may be entitled, including attorney fees; in addition to Medical Expenses for as long as needed for Plaintiff's medical conditions.

## COUNT   VII

381. As to **COUNT VII**, Plaintiff demands judgment against Defendant **OMAR KEVIR** in an amount not less than Ten Million U.S. Dollars ($10,000,000.00), and punitive damages not less than Thirty Million U.S. Dollars ($30,000,000.00), awarded against Defendant **OMAR KEVIR**, plus costs and any other relief to which Plaintiff may be entitled, including attorney fees; in addition to Medical Expenses for as long as needed for Plaintiff's medical conditions.

382. Further, Plaintiff Williams would pray that this Honorable Court **GRANT** and **ORDER** an injunction against the herein enumerated Defendant(s) to never harass, retaliate, or otherwise harm or injure Plaintiff Williams.

383. Plaintiff Williams would further pray for any other relief that this Honorable Court finds equitable and just.

## XXV.    PLAINTIFF'S JURY TRIAL DEMAND

384. Plaintiff Williams hereby respectfully demands a **JURY TRIAL** in the instant cause of action because facts claimed in the foregoing Bivens Action establishes a cause of action with facts triable by a competent Jury, and clearly demonstrates that genuine issues of material fact that exist preclude Summary Judgment.

## XXVI.    PLAINTIFF IS SEEKING FTCA RELIEF LAST

385. Plaintiff Williams hereby gives notice and praecipe that he is **seeking relief for his FTCA claim last**, to enable said Plaintiff the opportunity to make a strategic choice as to whether he will pursue his

130

FTCA claims as part of a bifurcated trial, realizing that once relief is awarded for any FTCA claim, that Plaintiff will be foreclosed from seeking any other relief against the subject employee(s) of the United States Government subject to the FTCA claim; i.e., in a Bivens Action.

## XXVII.    NOTICE OF RETALIATION AND TRESPASS

386.    Due to the sensitive nature and the seriousness of Plaintiff's **VERIFIED COMPLAINT,** and the claims herein averred, Plaintiff Williams gives his actual and constructive notice that he fears retaliation from Government employees and officers.  Plaintiff Williams is, in fact and indeed, a Federal inmate, entrusted to the Department of Justice, Federal Bureau of Prisons -- the very same United States Government agency which all of the Federal Defendant(s) herein listed are, or were employeed.  As a Federal Bureau of Prisons inmate, Plaintiff Williams has witnessed retaliation many times during incarceration, and has been on the receiving end of retaliation, at the hands of Government officers in the Bureau of Prisons that are sworn to uphold the Constitution of the United States.

387.    As such, Plaintiff Williams gives his notice that any retaliation on the part of Government officers/actors/employees will constitute trespass upon the legal proceedings brought via this, the above styled **VERIFIED COMPLAINT,** and that said offending trespasser or tortfeasor will be placed as a Defendant herein as a co-conspirator with the above enumerated Defendant(s).

## XXVIII.    PLAINTIFF'S RECENT HOSPITALIZATION SUBSTANTIALLY DISRUPTED HIS ABILITY TO COMPLETE THIS VERIFIED COMPLAINT

388.    Affixed hereto is an Affidavit of Plaintiff Williams detailing how the ability to prepare this **VERIFIED COMPLAINT** was substantially disrupted by

hospitalization for eye treatments during a period from August 11, 2016, through December 16, 2016. (See Exhibit 21). Upon return to FCI - Englewood on December 16, 2016, Plaintiff's ability to continue preparation of this **VERIFIED COMPLAINT** resumed, after a four (4) month disruption, when Plaintiff returned to FCI - Englewood and when his personal property was returned to him on December 22, 2016. (See Id.).

## XXIX.    VERIFICATION

389. I, **WALTER LEE WILLIAMS**, do hereby affirm under penalty of perjury, that the foregoing **VERIFIED COMPLAINT** is certified as being true, correct, and complete; and, to those claims of belief, believes said claims to be true; and, that Verification is made pursuant to 28 U.S.C. §1746.

Further Affaint Sayeth Naught.

**EXECUTED**, at FCI - Englewood, Littleton, Colorado, on the 17 TH day of _APRIL_, in the year of our Lord, 2017.

Walter L. Williams
Inmate No. - 65562-112
FCI - Englewood
9595 West Quincy Avenue
Littleton, Colorado 80123
303-763-4300
**PRO SE REPRESENTATION**



**PRIORITY MAIL**

**UNITED STATES POSTAL SERVICE**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**

7012 3460 0002 2200 9754

**SPECIAL REQUIREMENTS MAY APPLY:**

Customs forms may be required to international or
Overseas Military destinations. Consult the Customs
Form Indicator or Mailing Standards at pe.usps.com
or ask a retail associate for details.

20-POUND WEIGHT LIMIT APPLIES TO
INTERNATIONAL DESTINATIONS.

CORRECTIONAL SYSTEMS MANAGEMENT
FEDERAL CORRECTIONAL INSTITUTION
9595 WEST QUINCY AVE., LITTLETON, CO. 80123

DATE/INITIALS _____

APR 18 2017



REGISTERED
CLERK U.S. DISTRICT COURT
APR 20 2017
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY



THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING
PROCEDURES FOR FORWARDING TO YOU. THE LETTER HAS NEITHER BEEN
OPENED NOR INSPECTED. IF THE WRITER RAISES A QUESTION OR PROBLEM
OVER WHICH THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN
THE MATERIAL FOR FURTHER INFORMATION OR CLARIFICATION. IF THE
WRITER ENCLOSES CORRESPONDENCE FOR FORWARDING TO ANOTHER
ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.

From:   ⟨⟩ 65562-112 ⟨⟩
        Walter Williams
        9595 W Quincy AVE
        Federl Corectinl Institut
        Littleton, CO 80123
        United States

To:     ⟨⟩ 65562-112 ⟨⟩
        Clerk U S District Court
        312 N Spring ST
        Room G 8
        LOS Angeles, CA 90012
        United States

Country of Destination.  /Pays de destination:

"LEGAL"

APR 18 2017

$ 000.00



**PRIORITY®**
**MAIL**

*UNITED STATES POSTAL SERVICE*

Medium Flat Rate Box

*Visit us at usps.com*

**SPECIAL REQUIREMENTS MAY APPLY:**

Customs forms may be required to International or
Overseas Military destinations. Consult the Customs
Form Indicator or Mailing Standards at pe.usps.com
or ask a retail associate for details.

**20-POUND WEIGHT LIMIT APPLIES TO
INTERNATIONAL DESTINATIONS.**


Please
Recycle

This packaging is the property of the U.S.
Postal Service® and is provided solely for use
in sending Priority Mail® shipments.
Misuse may be a violation of federal law. This
packaging is not for resale. FRB2 © U.S. Postal
Service; March 2012; All rights reserved.

FRB2 March 2012 © U.S. Postal Service

Schedule package pickup right from your home
or office at usps.com/pickup
Print postage online



PS00011000000

ID: 11.875 x 3.4375 x 13.75
OD: 12 x 3.5625 x 14
ODCUFT: 0.346