

FILED
CLERK, U.S. DISTRICT COURT

APR 2 1 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CASE NUMBER: CV17-3040-ODW(FFMx)

WALTER LEE WILLIAMS,
Plaintiff,

VS.

UNITED STATES OF AMERICA,
et al.,
Defendants.

VERIFIED COMPLAINT
VOLUME 2
EXHIBIT 15 - EXHIBIT 21

WALTER LEE WILLIAMS
Inmate No. - 65562-112
FCI - Englewood
9595 West Quincy Avenue
Littleton, Colorado 80123
303-763-4300
PRO SE REPRESENTATION

---

EXHIBIT  15

---

Plaintiff's Affidavit Detailing Attempts
to Obtain Medical Records

WALTER LEE WILLIAMS
Inmate No. - 65562-112
FCI - Englewood
9595 West Quincy Avenue
Littleton, Colorado 80123
PRO SE REPRESENTATION

---

### AFFIDAVIT:    ATTEMPTS TO OBTAIN MEDICAL RECORDS

---

My name is **WALTER LEE WILLIAMS**, I am the Plaintiff in this cause of action, and I am an inmate in Federal custody at FCI - Englewood, Littleton, Colorado. I certify that I have personal knowledge of the facts and information averred to herein.  Under penalty of perjury, and to the best of my ability, belief, and knowledge, I do hereby depose, aver, and state the following as true and correct:

1.     That in early February 2016, I sent a written request for a copy of my medical records to the Medical Records Department of this institution.

2.     That Ms. Beatty, the then medical records officer at FCI - Englewood, sent me a reply stating that the records, as I had requested, is not permitted. That on March 1, 2016, I went to see Ms. Beatty, and she told me it is not possible for me to get a copy of my medical records until I am released from Federal custody.  That Ms. Beatty stated this is BOP policy.  That I asked Ms. Beatty if she could tell me the name and/or number of this BOP policy,  That Ms. Beatty responded to me by stating "I don't know, you will have to go down to the Law Library and look it up."

3.     That I went to the Law Library and asked an inmate law library worker in the Law Library how to find such a regulation.  That the inmate

worker didn't know how to look up the information. That when I asked other law library workers at the Law Library, they didn't know either.

4.    That I asked what staff member was in charge of the Law Library. That I was informed that Ms. Taylor, at the time, was in charge of the Law Library, and that she does not answer reference questions from inmates.

5.    That on March 8, 2016, I returned to the medical records office and asked Ms. Beatty if I could at least view my medical records. That Ms. Beatty said that this request was not possible. That Ms. Beatty told me the only thing I could do was to go to sick call and ask to meet with a medical provider. That Ms. Beatty stated the medical provider could look up specific things and information in my medical records if I had questions.

6.    That I asked Ms. Beatty if she would put this denial of my right to view my medical records in writing, and she refused. That Ms. Beatty stated she was only following Federal Law. That I, again, asked Ms. Beatty if she could tell me the name and/or number of this law, and she said no.

7.    That sometime after March 8, 2016, Ms. Beatty no longer worked at FCI - Englewood.

8.    That on or about June 1, 2016, a new person was hired and put into place at the medical records office.

9.    That shortly thereafter, I made another request for medical records. That this new person was very helpful, and that on June 30, 2016, I was provided with some medical records from Health Services, which I have included with my Verified Complaint.

10.    That this Affidavit is in support of, and attached to, my Verified Complaint.

11.    Pursuant to 28 U.S.C. §1746 and 18 U.S.C. §1621, I **WALTER LEE WILLIAMS**, the undersigned Plaintiff in the above referenced action, do hereby

2

aver, under penalty of perjury, that the information contained herein is true and correct to the best of my ability, belief, and knowledge.

**FURTHER AFFIANT SAYETH NAUGHT.**

    **EXECUTED ON THIS** _____11_____ day of _____April_____, 2017, at FCI – Englewood, Littleton, Colorado.

                            Walter L. Williams
                            Inmate No. – 65562-112
                            FCI – Englewood
                            9595 West Quincy Avenue
                            Littleton, Colorado 80123
                            303-763-4300
                            **PRO SE REPRESENTATION**

---

**SUBSCRIBED AND SWORN TO BEFORE ME** on this _____11th_____ day of _____April_____, 2017, at FCI – Englewood, Littleton, Colorado.

```
┌─────────────────────────────────────┐
│         AMANDA L. VARGAS             │
│ (SEAL)  NOTARY PUBLIC                │
│         STATE OF COLORADO            │
│         NOTARY ID 20104003392        │
│ MY COMMISSION EXPIRES FEBRUARY 17, 2018 │
└─────────────────────────────────────┘
```

                            Notary Public
                            State of Colorado

EXHIBIT  16

Plaintiff's December 29, 2014 Tort Claim

*Copy*

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: Bureau of Prisons | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. Walter Lee Williams  65562112 Metropolitan Detention Center PO Box 1500  Los Angeles CA 90053 |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 3 Nov 1948 | 5. MARITAL STATUS single | 6. DATE AND DAY OF ACCIDENT Tues January 28, 2014 | 7. TIME (A.M. OR P.M.) 8 P.M. |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

see attached

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code)

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

see attached

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Joel Dreyer, M.D. | MDC, PO Box 1500 Los Angeles CA 90053 |
| Donal Goff  *Jonathan Turner* | "      "      " |
| Romie Tucker  *Philip Roland* | "      "      " |
| Michael Peterson  *John Scott* | "      "      " |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY *ten million dollars $10,000,000.00* | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). *Walter L. Williams* | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE *29 Dec 2014* |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No    17. If deductible, state amount.

*N/A*                                                                                                    *N/A*

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:* The information requested is to be used in evaluating claims.
C.  *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

The date of the incident was January 28, 2014. Shortly after I had been returning to my cell. There was no "Wet Floor" sign and not seeing a puddle of water, I slipped and fell on my left hip. Though I was in terrible pain, I remember C.O. Torres calling for medical assistance. I may have blanked out, but after some time I looked up to see nurse Michael Saulibio gruffly ordering me, "Get up!" When I could not move, he bent down and began pressing on my hip. The pain was so sharp I screamed in agony and begged him to stop. He raised my leg and again I screamed loudly and begged him to stop. He told me he had checked my femur and said, "Nothing is broken. It's only a sprain." I wanted to see a doctor, because I did not trust his diagnosis.

Other inmates saw and heard this incident. I remember inmate Joel Dreyer (who is a certified M.D. from Wayne State College of Medicine), whose cell was next to mine, tell the staff, "He might have a broken bone. He needs to be taken to a hospital immediately." They ignored him.

At no time did I refuse medical attention. Again I begged for a doctor, but someone said there was no doctor on duty at that time. Every time nurse Saulibio moved my leg I screamed in pain. It felt like he was driving a large nail into my hip with a hammer. I was fearful he would do even more damage if he kept pressing on it. Mr. Saulibio told the guards to take me to my cell. Two guards I did not recognize moved me onto a stretcher and carried me to my cell door.

As they stood up the stretcher for me to try to stand, one of them said, "I heard him refuse medical attention." Though I was in extreme agony, I managed to reply sharply: "I said no such thing. I want to see a doctor. That is ridiculous and untrue." I never refused to see a doctor. The two guards almost pushed me into the room, and ordered my cellmate Michael Peterson to take me to my bunk. Peterson did so, as one of the officers, a lieutenant, said about me, "He's full of shit." Then they left and locked the cell door.

I lay in agony all night, with no pain medications and no medical attention. Every time I tried to move, the pain was so sharp I felt like I was going to die. I could not get up to go to the toilet, and was forced to lie in my own urine when I had to urinate. I did not sleep at all. Other inmates heard my moans that night.

At 7 am the next morning when the cell door was unlocked I begged C.O. De Hoyes to get a doctor. He said he would do so. I waited and waited. When he came again later, I repeated my plea for a doctor. Several inmates came by to see me, and told me they also begged him for a doctor. When no doctor came by lunchtime, my cellmate Peterson asked Mr. De Hoyas if he could bring a lunch tray for me. De Hoyes refused that request, and said, "If Williams wants to eat, he must come downstairs." I could not even walk across my cell to the toilet, much less down the flight of stairs. So I had to lie there all day with no food.

Finally, nurse Buckingham arrived and talked to me, saying they would take me to X-ray. About 1:30 pm C.O. Mr. Ford arrived with a stretcher. He and some other staff carried me down the stairs, to the elevator, and to medical X-ray. The X-ray technician told me the X-ray showed that my upper femur was broken in three places. When I told him what nurse Saulibio said, that nothing was broken, the technician gave a look of disgust and said, "There is no way anyone could tell that without an X-ray." He said no one should have been moving my leg around, and a nurse should not be making a diagnosis. At last I understood why I was in so much pain, and that nurse Saulibio was totally wrong.

After that, nurse Smith treated me kindly and called an ambulance. About two hours later I was taken on a gurney downstairs to an ambulance. There I saw Mr. Torres again, who was by that time back on duty for the next day. I complained to him about Saulibio hurting me.

I was taken to White Memorial Hospital and finally seen by a doctor in the emergency room about 4:30 pm. It was about twenty hours from the time of my injury. Dr. Gallino performed emergency surgery, to insert a steel rod inside my left femur, with three bolts to attach the three broken parts at the top of my leg. I was kept in White Memorial Hospital for fifty days. I remain in a wheelchair to the present.

This injury has been the most painful experience of my life. I was brought back to MDC Los Angeles on March 19, 2014, and have been given no physical therapy since my return. When I checked into MDC, nurse Saulibio was on duty. I asked him if he remembered telling me that "Nothing was broken." Not only was he not apologetic in the least, but he made an excuse saying, "I could do nothing since you refused medical treatment." I replied, "That is a lie and you know it." I asked him if he had my signature refusing medical treatment. He said nothing.

When I returned to my housing unit at 5 South, a number of inmates told me that many of them were quite disturbed at the treatment I had received from MDC staff. Inmates Donald Goff, Dr. Joel Dreyer, Michael Peterson, Philip R. Roland, Jonathan Turner, Romie Tucker, John Boone, and others can testify that, not only did I not refuse medical treatment, but I asked to see a

doctor repeatedly. Several inmates asked the C.O. on duty the next day to take me to the medical center, since I was still lying in pain in my cell and unable to move.

Not only was Mr. Saulibio unresponsive to my complaint when I returned to MDC, but when I asked for my evening pain medication he told me: "The pharmacy is closed, and there is no way that anyone can get any medicines now." About half an hour later nurse Smith brought me medications. Once again Mr. Saulibio showed not the least bit of concern, and in fact told me something that was not true.

On subsequent days I made informal complaints to nurses Smith and Buckingham, and to medical administrator Ms. Devesa. Ms. Devesa promised to get back to me, but after hearing nothing from her I wrote in an email to her on March 22, 2014, Request to Staff, saying: "Please tell me what you are doing regarding the mistreatment of me by nurse Saulibio. What he did to me after my fall was barbaric as well as incompetent." I never received a reply to these informal complaints. The next time Warden Thomas came to my housing unit, I told her what nurse Saulibio did. After hearing no response from her, I told Dr. Sanovsky the same thing. I told him of my fear that Saulibio might try to retaliate against me, and I asked that Mr. Saulibio not be allowed any further interaction with me.

For awhile I did not see nurse Saulibio in my unit, but now he is back. Other inmates complain about his abusive behavior as well. He is a disgrace to the profession of nursing, and does not belong in any position where he has contact with patients.

Seeing no response to my informal complaints, now that I have been recently sentenced I make this request for administrative remedy. I was afraid of retaliation by Mr. Saulibio, and now that I know I will be leaving MDC soon, I am taking this formal action to appeal to the new Warden Mr. Shinn. Nothing has been done despite my informal requests, and this nurse still has his job.

The remedy I wish to seek is a sanction against Michael Saulibio, as well as compensation for the gross negligence, pain and suffering I experienced.

---

EXHIBIT   17

---

Letters and Administrative Remedy to
Central Office on Tort Claim
TRT-WXR-2015-01608



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_Western Regional Office_
_7338 Shoreline Drive_
_Stockton, California 95219_

January 6, 2015

Walter Williams
#65562-112
MDC Los Angeles
P.O. Box 1500
Los Angeles, CA 90053

RE:    Administrative Claim No. TRT-WXR-2015-01608 Received: January 5, 2015

Dear Mr. Williams:

This is to acknowledge receipt of your Claim for Damage, Injury or Death (Standard Form 95) submitted to or forwarded to this office under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671, et seq.

In accordance with the applicable provisions of the statute, this agency has up to six months from the date received in which to make a final determination of your administrative claim for damages.    This time frame began on the date that your claim was received for filing and processing as noted above.

Based on the location of your allegations, the following Consolidated Legal Center (CLC) will be handling your claim for investigation and response.    Please note all future correspondence and change of address should reference the administrative claim number and be directed to the CLC indicated:

| David Huband          x | Eliezer Ben-Shmuel | Dominic Ayotte |
|---|---|---|
| Supervisory Attorney | Supervisory Attorney | Deputy Regional Counsel |
| FCI Phoenix | MDC Los Angeles | Western Regional Office |
| 37900 N. 45th Ave. | 535 N. Alameda Street | 7338 Shoreline Drive |
| Phoenix, AZ 85086 | Los Angeles, CA 90012 | Stockton, CA 95219 |

Sincerely,

DENNIS M. WONG
WESTERN REGIONAL COUNSEL

DMW/aen



**U. S. Department of Justice**
**Federal Bureau of Prisons**
***Los Angeles Consolidated Legal Center***
*Metropolitan Detention Center Los Angeles*

_____

535 N. Alameda Street
Los Angeles, CA  90012

**DATE MAILED:**   JUN 2 5 2015

**Certified Receipt:   7002 0510 0003 7118 9464**

Walter L. Williams
Reg. No. 65562-112
USP Lompoc
3901 Klein Blvd
Lompoc, CA 93436

RE:   Administrative Claim No. TRT-WXR-2015-01608

Dear Claimant:

This is in response to the administrative claim submitted to the office under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671, et seq. You seek $10,000,000.00 in monetary damages compensation for the alleged staff negligence. Specifically, you claim that the health services staff failed to provide adequate medical treatment and pain management when you slipped and fell on your left hip at the Metropolitan Detention Center Los Angeles, California, on January 28, 2014.

An investigation into your claim was conducted and completed. The investigation fails to disclose any evidence of negligence for which the United States is liable. You have failed to establish that you have suffered an injury as a result of staff negligence in this matter.

Accordingly, your claim is denied. If you are not satisfied with this determination, you are afforded six months from the date of the mailing of this letter via certified mail in which to bring suit in the appropriate United States District Court.

Sincerely,

Eliezer Ben-Shmuel
Supervisory Attorney

Dennis M. Wong
Western Regional Counsel

U.S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

*Englewood, CO 80123*

July 7, 2014

MEMORANDUM FOR M. ALARID, CASE MANAGER

SUBJECT:      Rejection Notice — Administrative Remedy
              WILLIAMS, Walter Lee
              Reg. No. 65562-112

This rejection notice was received at FCI Englewood and given to inmate Williams on July 7, 2015.  This notice was sent from USP Victorville, California.

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Williams, Walter L.                   65562-112          LW          FCI Englewood

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

I disagree with the decision I received regarding my Administrative Remedy Appeal Request ( Administrative Claim No. TRT-WXR-2015-01608 ) that I filed on January 14, 2015, and I am filing another appeal.
I am filing this form by placing it in the U.S. mailbox on August 6, 2015.

There was a long period of time in transit, and I did not receive the Regional rejection letter until the evening of July 7, 2015.  I requested this form, which I did not receive until later date.
    Please see the attached explanation in my BP-9 and BP-10 forms which I sent earlier.  I stand by my statements in those forms.
    Please reconsider this claim.

August 6, 2015

DATE                                                SIGNATURE OF REQUESTER

**Part B—RESPONSE**

DATE                                                GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                          CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

DATE                                        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN                                                                  BP-231(13)
                                                                          APRIL 1982

EXHIBIT   18

Plaintiff's Administrative Remedy on
the Issue of the January 28, 2014 Injury

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** WILLIAMS, WALTER L.   65562-112   5 South   MDC Los Angeles

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

see attached docum't (1½ pages)

29 Dec. 2014
DATE

*Walter T. Williams*
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                CASE NUMBER: _____

_____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN     PRINTED ON RECYCLED PAPER     BP-229(13)
APRIL 1982

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

---------------------------------------------------------------------------------------------

FROM: 65562112
TO: Dobbs, William; Fernandez, Manuel; Hubbard, Tom; Mcdougall, Cynthia; Stafford, Doan; Williams, Opal C
SUBJECT: administrative remedy
DATE: 12/19/2014 07:16:33 PM

REQUEST FOR ADMINISTRATIVE REMEDY
Williams, Walter L.   65562-112   5 South   MDC Los Angeles

Part A -- Inmate Request

The date of the incident was January 28, 2014.  Shortly after 8 pm, I was returning to my cell.  There was no "Wet Floor" sign, and not seeing a puddle of water, I slipped and fell on my left hip.  Though I was in terrible pain, I remember C.O. Torres calling for medical assistance.  I may have blanked out, but after some time I looked up to see nurse Michael Saulibio gruffly ordering me, "Get up!"  When I could not move, he bent down and began pressing on my hip.  The pain was so sharp I screamed in agony and begged him to stop.  He raised my leg and again I screamed loudly and begged him to stop.  He told me he had checked my femur and said, "Nothing is broken.  It's only a sprain."  I wanted to see a doctor, because I did not trust his diagnosis.

Other inmates saw and heard this incident.  I remember inmate Joel Dreyer (who is a certified M.D. from Wayne State College of Medicine), whose cell was next to mine, tell the staff, "He might have a broken bone.  He needs to be taken to a hospital immediately."  They ignored him.

At no time did I refuse medical attention.  Again I begged for a doctor, but someone said there was no doctor on duty at that time.  Every time nurse Saulibio moved my leg I screamed in pain.  It felt like he was driving a large nail into my hip with a hammer.  I was fearful he would do even more damage if he kept pressing on it.  Mr. Saulibio told the guards to take me to my cell.  Two guards I did not recognize moved me onto a stretcher and carried me to my cell door.

As they stood up the stretcher for me to try to stand, one of them said, "I heard him refuse medical attention."  Though I was in extreme agony, I managed to reply sharply: "I said no such thing.  I want to see a doctor.  That is ridiculous and untrue."  I never refused to see a doctor.  The two guards almost pushed me into the room, and ordered my cellmate Michael Peterson to take me to my bunk.  Peterson did so, as one of the officers, a lieutenant, said about me, "He's full of shit."  Then they left and locked the cell door.

I lay in agony all night, with no pain medications and no medical attention.  Every time I tried to move, the pain was so sharp I felt like I was going to die.  I could not get up to go to the toilet, and was forced to lie in my own urine when I had to urinate.  I did not sleep at all.  Other inmates heard my moans that night.

At 7 am the next morning when the cell door was unlocked I begged C.O. De Hoyes to get a doctor.  He said he would do so.  I waited and waited.  When he came again later, I repeated my plea for a doctor.  Several inmates came by to see me, and told me they also begged him for a doctor.  When no doctor came by lunchtime, my cellmate Peterson asked Mr. De Hoyas if he could bring a lunch tray for me.  De Hoyes refused that request, and said, "If Williams wants to eat, he must come downstairs."  I could not even walk across my cell to the toilet, much less down the flight of stairs.  So I had to lie there all day with no food.

Finally, nurse Buckingham arrived and talked to me, saying they would take me to X-ray.  About 1:30 pm C.O. Mr. Ford arrived with a stretcher.  He and some other staff carried me down the stairs, to the elevator, and to medical X-ray.  The X-ray technician told me the X-ray showed that my upper femur was broken in three places.  When I told him what nurse Saulibio said, that nothing was broken, the technician gave a look of disgust and said, "There is no way anyone could tell that without an X-ray."  He said no one should have been moving my leg around, and a nurse should not be making a diagnosis.  At last I understood why I was in so much pain, and that nurse Saulibio was totally wrong.

After that, nurse Smith treated me kindly and called an ambulance.  About two hours later I was taken on a guerney downstairs to an ambulance.  There I saw Mr. Torres again, who was by that time back on duty for the next day.  I complained to him about Saulibio hurting me.

I was taken to White Memorial Hospital and finally seen by a doctor in the emergency room about 4:30 pm.  It was about twenty hours from the time of my injury.  Dr. Gallino performed emergency surgery, to insert a steel rod inside my left femur, with three bolts to attach the three broken parts at the top of my leg.  I was kept in White Memorial Hospital for fifty days.  I remain in a wheelchair to the present.

This injury has been the most painful experience of my life.  I was brought back to MDC Los Angeles on March 19, 2014, and have been given no physical therapy since my return.  When I checked into MDC, nurse Saulibio was on duty.  I asked him if he remembered telling me that "Nothing was broken."  Not only was he not apologetic in the least, but he made an excuse saying, "I could do nothing since you refused medical treatment."  I replied, "That is a lie and you know it."  I asked him if he had my signature refusing medical treatment.  He said nothing.

When I returned to my housing unit at 5 South, a number of inmates told me that many of them were quite disturbed at the treatment I had received from MDC staff.  Inmates Donald Goff, Dr. Joel Dreyer, Michael Peterson, Philip R. Roland, Jonathan Turner, Romie Tucker, John Boone, and others can testify that, not only did I not refuse medical treatment, but I asked to see a

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

--------------------------------------------------------------------------------------------------

doctor repeatedly.  Several inmates asked the C.O. on duty the next day to take me to the medical center, since I was still lying in pain in my cell and unable to move.

Not only was Mr. Saulibio unresponsive to my complaint when I returned to MDC, but when I asked for my evening pain medication he told me: "The pharmacy is closed, and there is no way that anyone can get any medicines now."  About half an hour later nurse Smith brought me medications.  Once again Mr. Saulibio showed not the least bit of concern, and in fact told me something that was not true.

On subsequent days I made informal complaints to nurses Smith and Buckingham, and to medical administrator Ms. Devesa.  Ms. Devesa promised to get back to me, but after hearing nothing from her I wrote in an email to her on March 22, 2014, Request to Staff, saying: "Please tell me what you are doing regarding the mistreatment of me by nurse Saulibio.  What he did to me after my fall was barbaric as well as incompetent."  I never received a reply to these informal complaints.  The next time Warden Thomas came to my housing unit, I told her what nurse Saulibio did.  After hearing no response from her, I told Dr. Sanovsky the same thing.  I told him of my fear that Saulibio might try to retaliate against me, and I asked that Mr. Saulibio not be allowed any further interaction with me.

For awhile I did not see nurse Saulibio in my unit, but now he is back.  Other inmates complain about his abusive behavior as well.  He is a disgrace to the profession of nursing, and does not belong in any position where he has contact with patients.

Seeing no response to my informal complaints, now that I have been recently sentenced I make this request for administrative remedy.  I was afraid of retaliation by Mr. Saulibio, and now that I know I will be leaving MDC soon, I am taking this formal action to appeal to the new Warden Mr. Shinn.  Nothing has been done despite my informal requests, and this nurse still has his job.

The remedy I wish to seek is a sanction against Michael Saulibio, as well as compensation for the gross negligence, pain and suffering I experienced.

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

--------------------------------------------------------------------------------

FROM: 65562112
TO: Warden
SUBJECT: ***Request to Staff*** WILLIAMS, WALTER, Reg# 65562112, LOS-E-S
DATE: 12/30/2014 05:31:44 PM

To: 5 south
Inmate Work Assignment: none

Dear Warden:
This email is to let you know that yesterday December 29, I gave to my unit manager Ms. Navarro a BP 9 form for
Administrative Remedy.  Please acknowledge receipt of it when you receive it.
Thank you,
Walter Williams
65562112

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

--------------------------------------------------------------------------------

FROM: 65562112
TO: Health Service Administrator
SUBJECT: ***Request to Staff*** WILLIAMS, WALTER, Reg# 65562112, LOS-E-S
DATE: 01/03/2015 06:45:53 PM

To: 5 south
Inmate Work Assignment: none

Dear Ms. Devasa:
In March 2014, I spoke with you shortly after I returned from my fifty day stay at White Memorial Hospital, to request an informal resolution from you regarding nurse Michael Saulibio's treatment of me when I fell on January 28 and suffered three fractures in my left femur. When I received no response from you, I wrote you an email copout on March 22, saying: "Please tell me what you are doing regarding the horrid treatment of me by nurse Michael Saulibio. What he did to me after my fall was barbaric as well as incompetent." I never received a response from you regarding this informal complaint.
    Now, in addition to the complaints I have against him in January and March, I learned from other inmates that during pill line on December 28, 2014, Mr. Saulibio referred to me as "a scumbag" and loudly discussed my court case in front of inmates. His obvious purpose was to attempt to incite violence against me.
    I request that he be sanctioned and immediately removed from any interaction with inmates on 5 South housing unit. He is a direct danger to my safety.
    Please respond to this additional request for informal resolution of this issue.
Thank you,
Walter Williams
65562-112

No Response

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Williams, Walter L.          65562-112          5 south          MDC Los Angele
_____
      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

On December 31, 2014 my Administrative Remedy Request # 805988-F1 was rejected. The reason given for rejection was that I did not provide necessary evidence of my attempt at informal resolution. See enclosed description, specifying individuals contacted at attempt for resolution. On January 3, 2015 I again sent an email request to staff at MDC L.A Health Service Administrator Devasa, asking once again for informal resolution. As of this date I have received no response to any of my requests for resolution.

[four copies attached]

14 January 2015
_____                    _____
        DATE                                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

FEB

_____                    _____
        DATE                                      REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 805988-R1

**Part C - RECEIPT**

                                              CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____                    _____
        DATE                            SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                    PRINTED ON RECYCLED PAPER                    BP-230(13)

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

Type or use ball point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: __Williams, Walter L.__  ___69552-112___  __Lower West__  __FCI - Englewood__
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A—REASON FOR APPEAL**

On several occasions subsequent to the incident of January 28, 2014 -- where I fell and my femur was broken in three (3) places -- I attempted informal resolution pursuant to 28 C.F.R. §542.13 (BOP Program Statement 1330.17, Id. at ¶ 7). These respective informal resolution attempts were made of (1) Nurse Smith; (2) FA Buckingham; and (3) Health Services Administrator ("HSA") De Vasa (dates uncertain). Having received no response from previous informal resolution attempts, I also sent an inquiry via Tru-Lines e-mail to HSA De Vase on March 22, 2014 (See Exhibit 1). HSA De Vasa did not respond to this e-mail informal resolution attempt. Because of my ongoing legal case, I placed this grievance request on hold.

On December 19, 2014, I again filed an informal resolution request via Tru-Lines (See Exhibit 2); and on December 29, 2014, I filed a BP-9 (See Exhibit 3). On December 30 I sent a Tru-Lines e-mail to Warden Thomas. (See Exhibit 4). On December 31, 2014, I received a bogus Rejection Notice. (See Exhibit 5). On January 3, 2015, I made an inquiry of HSA De Vase. (See Exhibit 6). On January 14, 2015, I filed a BP-10 - Regional Administrative Remedy Appeal. (See Exhibit 7). Region also issues a bogus Rejection Notice dated February 4, 2015. (See Exhibit 8). Because of transfer to three (3) separate facilities, I did not receive this rejection Notice until July 7, 2015, as evidenced by the Rejection Notice itself, and by a letter from Case Manager, M. Alarid, dated July 7, 2014 (sic, should have been 2015). (See Exhibit 9).

I have complied with all requirements pursuant to 28 C.F.R. §542 and BOP Program Statement 1330.17, and thus, respectfully submit this Central Office Administrative Remedy Appeal for consideration at the Central Office level of my original BP-9 submission, as attached hereto.

__4 August 2015__  _Walter L. Williams_
DATE   SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____
DATE   GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE   CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____
DATE   SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN   BP-231(13) APRIL 1982

EXHIBIT  1

TRULINCS 65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

--------------------------------------------------------------------------------

FROM: 65562112
TO: Medical Records
SUBJECT: ***Request to Staff*** WILLIAMS, WALTER, Reg# 65562112, LOS-E-S
DATE: 03/22/2014 06:09:58 PM

To: 5 south
Inmate Work Assignment: none

Dear Ms. Devesa,
I returned from hip surgery in White Memorial Hospital last Tuesday, and was given a wheelchair that is broken and extremely difficult to maneuver. The seat is collapsing, and is held together with string. I have been told repeatedly that a better wheelchair will be provided to me "soon." But this many days later, nothing has happened. I need a new wheelchair without further delay, as well as a walker. I also am having sharp acid reflux and need some anti-acid. Commissary is closed next week and I cannot purchase any for two weeks.
Please tell me what you are doing regarding the mistreatment of me by nurse Saulibio. What he did to me after my fall was barbaric as well as incompetent.
Thank you for your prompt attention to these matters.
Walter Williams

EXHIBIT  2

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

---------------------------------------------------------------------------------

FROM: 65562112
TO: Dobbs, William; Fernandez, Manuel; Hubbard, Tom; Mcdougall, Cynthia; Stafford, Doan; Williams, Opal C
SUBJECT: administrative remedy
DATE: 12/19/2014 07:16:33 PM

REQUEST FOR ADMINISTRATIVE REMEDY
Williams, Walter L.   65562-112   5 South   MDC Los Angeles

Part A  --  Inmate Request

The date of the incident was January 28, 2014.  Shortly after 8 pm, I was returning to my cell.  There was no "Wet Floor"
sign, and not seeing a puddle of water, I slipped and fell on my left hip.  Though I was in terrible pain, I remember C.O. Torres
calling for medical assistance.  I may have blanked out, but after some time I looked up to see nurse Michael Saulibio gruffly
ordering me, "Get up!"  When I could not move, he bent down and began pressing on my hip.  The pain was so sharp I
screamed in agony and begged him to stop.  He raised my leg and again I screamed loudly and begged him to stop.  He told
me he had checked my femur and said, "Nothing is broken.  It's only a sprain."  I wanted to see a doctor, because I did not trust
his diagnosis.

Other inmates saw and heard this incident.  I remember inmate Joel Dreyer (who is a certified M.D. from Wayne State
College of Medicine), whose cell was next to mine, tell the staff, "He might have a broken bone.  He needs to be taken to a
hospital immediately."  They ignored him.

At no time did I refuse medical attention.  Again I begged for a doctor, but someone said there was no doctor on duty at that
time.  Every time nurse Saulibio moved my leg I screamed in pain.  It felt like he was driving a large nail into my hip with a
hammer.  I was fearful he would do even more damage if he kept pressing on it.  Mr. Saulibio told the guards to take me to my
cell.  Two guards I did not recognize moved me onto a stretcher and carried me to my cell door.

As they stood up the stretcher for me to try to stand, one of them said, "I heard him refuse medical attention."  Though I was
in extreme agony, I managed to reply sharply: "I said no such thing.  I want to see a doctor.  That is ridiculous and untrue."  I
never refused to see a doctor. The two guards almost pushed me into the room, and ordered my cellmate Michael Peterson to
take me to my bunk.  Peterson did so, as one of the officers, a lieutenant, said about me, "He's full of shit."  Then they left and
locked the cell door.

I lay in agony all night, with no pain medications and no medical attention.  Every time I tried to move, the pain was so sharp
I felt like I was going to die.  I could not get up to go to the toilet, and was forced to lie in my own urine when I had to urinate.  I
did not sleep at all.  Other inmates heard my moans that night.

At 7 am the next morning when the cell door was unlocked I begged C.O. De Hoyes to get a doctor.  He said he would do
so.  I waited and waited.  When he came again later, I repeated my plea for a doctor.  Several inmates came by to see me, and
told me they also begged him for a doctor.  When no doctor came by lunchtime, my cellmate Peterson asked Mr. De Hoyas if
he could bring a lunch tray for me.  De Hoyes refused that request, and said, "If Williams wants to eat, he must come
downstairs."  I could not even walk across my cell to the toilet, much less down the flight of stairs.  So I had to lie there all day
with no food.

Finally, nurse Buckingham arrived and talked to me, saying they would take me to X-ray.  About 1:30 pm C.O. Mr. Ford
arrived with a stretcher.  He and some other staff carried me down the stairs, to the elevator, and to medical X-ray.  The X-ray
technician told me the X-ray showed that my upper femur was broken in three places.  When I told him what nurse Saulibio
said, that nothing was broken, the technician gave a look of disgust and said, "There is no way anyone could tell that without an
X-ray."  He said no one should have been moving my leg around, and a nurse should not be making a diagnosis. At last I
understood why I was in so much pain, and that nurse Saulibio was totally wrong.

After that, nurse Smith treated me kindly and called an ambulance.  About two hours later I was taken on a guerney
downstairs to an ambulance.  There I saw Mr. Torres again, who was by that time back on duty for the next day.  I complained
to him about Saulibio hurting me.

I was taken to White Memorial Hospital and finally seen by a doctor in the emergency room about 4:30 pm.  It was about
twenty hours from the time of my injury.  Dr. Gallino performed emergency surgery, to insert a steel rod inside my left femur,
with three bolts to attach the three broken parts at the top of my leg.  I was kept in White Memorial Hospital for fifty days.  I
remain in a wheelchair to the present.

This injury has been the most painful experience of my life.  I was brought back to MDC Los Angeles on March 19, 2014,
and have been given no physical therapy since my return.  When I checked into MDC, nurse Saulibio was on duty.  I asked him
if he remembered telling me that "Nothing was broken."  Not only was he not apologetic in the least, but he made an excuse
saying, "I could do nothing since you refused medical treatment."  I replied, "That is a lie and you know it."  I asked him if he had
my signature refusing medical treatment.  He said nothing.

When I returned to my housing unit at 5 South, a number of inmates told me that many of them were quite disturbed at the
treatment I had received from MDC staff.  Inmates Donald Goff, Dr. Joel Dreyer, Michael Peterson, Philip R. Roland, Jonathan
Turner, Romie Tucker, John Boone, and others can testify that, not only did I not refuse medical treatment, but I asked to see a

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

----------------------------------------------------------------------------------------------

doctor repeatedly.  Several inmates asked the C.O. on duty the next day to take me to the medical center, since I was still lying in pain in my cell and unable to move.

Not only was Mr. Saulibio unresponsive to my complaint when I returned to MDC, but when I asked for my evening pain medication he told me: "The pharmacy is closed, and there is no way that anyone can get any medicines now."  About half an hour later nurse Smith brought me medications.  Once again Mr. Saulibio showed not the least bit of concern, and in fact told me something that was not true.

On subsequent days I made informal complaints to nurses Smith and Buckingham, and to medical administrator Ms. Devesa.  Ms. Devesa promised to get back to me, but after hearing nothing from her I wrote in an email to her on March 22, 2014, Request to Staff, saying: "Please tell me what you are doing regarding the mistreatment of me by nurse Saulibio.  What he did to me after my fall was barbaric as well as incompetent."  I never received a reply to these informal complaints.  The next time Warden Thomas came to my housing unit, I told her what nurse Saulibio did.  After hearing no response from her, I told Dr. Sanovsky the same thing.  I told him of my fear that Saulibio might try to retaliate against me, and I asked that Mr. Saulibio not be allowed any further interaction with me.

For awhile I did not see nurse Saulibio in my unit, but now he is back.  Other inmates complain about his abusive behavior as well.  He is a disgrace to the profession of nursing, and does not belong in any position where he has contact with patients.

Seeing no response to my informal complaints, now that I have been recently sentenced I make this request for administrative remedy.  I was afraid of retaliation by Mr. Saulibio, and now that I know I will be leaving MDC soon, I am taking this formal action to appeal to the new Warden Mr. Shinn.  Nothing has been done despite my informal requests, and this nurse still has his job.

The remedy I wish to seek is a sanction against Michael Saulibio, as well as compensation for the gross negligence, pain and suffering I experienced.

EXHIBIT  3

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: WILLIAMS, WALTER L.   65562-112   5 South   MDC Los Angeles
　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　REG. NO.　　　UNIT　　　INSTITUTION

**Part A– INMATE REQUEST**

see attached docmt (1 pages)

27 Dec, 2014
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                        CASE NUMBER: _____

                                                  CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
　　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　REG. NO.　　　UNIT　　　INSTITUTION

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                  PRINTED ON RECYCLED PAPER                    BP–229(13)
                                                                       APRIL 1982

accident was February 29, 2014. Shortly after it, and was returning to my cell. There was no "Wet Floor" sign, and not seeing a puddle of water, I slipped and fell on my left hip. Though I was in terrible pain, I remember C.O. Torres calling for medical assistance. I may have blanked out, but after some time I looked up to see nurse Michael Saulibio gruffly ordering me, "Get up!" When I could not move, he bent down and began pressing on my hip. The pain was so sharp I screamed in agony and begged him to stop. He raised my leg and again I screamed loudly and begged him to stop. He told me he had checked my femur and said, "Nothing is broken. It's only a sprain." I wanted to see a doctor, because I did not trust his diagnosis.

Other inmates saw and heard this incident. I remember inmate Joel Dreyer (who is a certified M.D. from Wayne State College of Medicine), whose cell was next to mine, tell the staff, "He might have a broken bone. He needs to be taken to a hospital immediately." They ignored him.

At no time did I refuse medical attention. Again I begged for a doctor, but someone said there was no doctor on duty at that time. Every time nurse Saulibio moved my leg I screamed in pain. It felt like he was driving a large nail into my hip with a hammer. I was fearful he would do even more damage if he kept pressing on it. Mr. Saulibio told the guards to take me to my cell. Two guards I did not recognize moved me onto a stretcher and carried me to my cell door.

As they stood up the stretcher for me to try to stand, one of them said, "I heard him refuse medical attention." Though I was in extreme agony, I managed to reply sharply: "I said no such thing. I want to see a doctor. That is ridiculous and untrue." I never refused to see a doctor. The two guards almost pushed me into the room, and ordered my cellmate Michael Peterson to take me to my bunk. Peterson did so, as one of the officers, a lieutenant, said about me, "He's full of shit." Then they left and locked the cell door.

I lay in agony all night, with no pain medications and no medical attention. Every time I tried to move, the pain was so sharp I felt like I was going to die. I could not get up to go to the toilet, and was forced to lie in my own urine when I had to urinate. I did not sleep at all. Other inmates heard my moans that night.

At 7 am the next morning when the cell door was unlocked I begged C.O. De Hoyes to get a doctor. He said he would do so. I waited and waited. When he came again later, I repeated my plea for a doctor. Several inmates came by to see me, and told me they also begged him for a doctor. When no doctor came by lunchtime, my cellmate Peterson asked Mr. De Hoyas if he could bring a lunch tray for me. De Hoyes refused that request, and said, "If Williams wants to eat, he must come downstairs." I could not even walk across my cell to the toilet, much less down the flight of stairs. So I had to lie there all day with no food.

Finally, nurse Buckingham arrived and talked to me, saying they would take me to X-ray. About 1:30 pm C.O. Mr. Ford arrived with a stretcher. He and some other staff carried me down the stairs, to the elevator, and to medical X-ray. The X-ray technician told me the X-ray showed that my upper femur was broken in three places. When I told him what nurse Saulibio said, that nothing was broken, the technician gave a look of disgust and said, "There is no way anyone could tell that without an X-ray." He said no one should have been moving my leg around, and a nurse should not be making a diagnosis. At last I understood why I was in so much pain, and that nurse Saulibio was totally wrong.

After that, nurse Smith treated me kindly and called an ambulance. About two hours later I was taken on a guerney downstairs to an ambulance. There I saw Mr. Torres again, who was by that time back on duty for the next day. I complained to him about Saulibio hurting me.

I was taken to White Memorial Hospital and finally seen by a doctor in the emergency room about 4:30 pm. It was about twenty hours from the time of my injury. Dr. Gallino performed emergency surgery, to insert a steel rod inside my left femur, with three bolts to attach the three broken parts at the top of my leg. I was kept in White Memorial Hospital for fifty days. I remain in a wheelchair to the present.

This injury has been the most painful experience of my life. I was brought back to MDC Los Angeles on March 19, 2014, and have been given no physical therapy since my return. When I checked into MDC, nurse Saulibio was on duty. I asked him if he remembered telling me that "Nothing was broken." Not only was he not apologetic in the least, but he made an excuse saying, "I could do nothing since you refused medical treatment." I replied, "That is a lie and you know it." I asked him if he had my signature refusing medical treatment. He said nothing.

When I returned to my housing unit at 5 South, a number of inmates told me that many of them were quite disturbed at the treatment I had received from MDC staff. Inmates Donald Goff, Dr. Joel Dreyer, Michael Peterson, Philip R. Roland, Jonathan Turner, Romie Tucker, John Boone, and others can testify that, not only did I not refuse medical treatment, but I asked to see a

doctor repeatedly. Several inmates asked the C.O. on duty the next day to take me to the medical center, since I was still lying in pain in my cell and unable to move.

Not only was Mr. Saulibio unresponsive to my complaint when I returned to MDC, but when I asked for my evening pain medication he told me. "The pharmacy is closed, and there is no way that anyone can get any medicines now." About half an hour later nurse Smith brought me medications. Once again Mr. Saulibio showed not the least bit of concern, and in fact told me something that was not true.

On subsequent days I made informal complaints to nurses Smith and Buckingham, and to medical administrator Ms. Devesa. Ms. Devesa promised to get back to me, but after hearing nothing from her I wrote in an email to her on March 22, 2014, Request to Staff, saying: "Please tell me what you are doing regarding the mistreatment of me by nurse Saulibio. What he did to me after my fall was barbaric as well as incompetent." I never received a reply to these informal complaints. The next time Warden Thomas came to my housing unit, I told her what nurse Saulibio did. After hearing no response from her, I told Dr. Sanovsky the same thing. I told him of my fear that Saulibio might try to retaliate against me, and I asked that Mr. Saulibio not be allowed any further interaction with me.

For awhile I did not see nurse Saulibio in my unit, but now he is back. Other inmates complain about his abusive behavior as well. He is a disgrace to the profession of nursing, and does not belong in any position where he has contact with patients.

Seeing no response to my informal complaints, now that I have been recently sentenced I make this request for administrative remedy. I was afraid of retaliation by Mr. Saulibio, and now that I know I will be leaving MDC soon, I am taking this formal action to appeal to the new Warden Mr. Shinn. Nothing has been done despite my informal requests, and this nurse still has his job.

The remedy I wish to seek is a sanction against Michael Saulibio, as well as compensation for the gross negligence, pain and suffering I experienced.

EXHIBIT 4

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

---------------------------------------------------------------------------------

FROM: 65562112
TO: Dobbs, William; Fernandez, Manuel; Hubbard, Tom; Mcdougall, Cynthia; Stafford, Doan; Williams, Opal C
SUBJECT: administrative remedy
DATE: 12/19/2014 07:16:33 PM

REQUEST FOR ADMINISTRATIVE REMEDY
Williams, Walter L.   65562-112   5 South   MDC Los Angeles

Part A  --  Inmate Request

The date of the incident was January 28, 2014.  Shortly after 8 pm, I was returning to my cell.  There was no "Wet Floor" sign, and not seeing a puddle of water, I slipped and fell on my left hip.  Though I was in terrible pain, I remember C.O. Torres calling for medical assistance.  I may have blanked out, but after some time I looked up to see nurse Michael Saulibio gruffly ordering me, "Get up!"  When I could not move, he bent down and began pressing on my hip.  The pain was so sharp I screamed in agony and begged him to stop.  He raised my leg and again I screamed loudly and begged him to stop.  He told me he had checked my femur and said, "Nothing is broken.  It's only a sprain."  I wanted to see a doctor, because I did not trust his diagnosis.

Other inmates saw and heard this incident.  I remember inmate Joel Dreyer (who is a certified M.D. from Wayne State College of Medicine), whose cell was next to mine, tell the staff, "He might have a broken bone.  He needs to be taken to a hospital immediately."  They ignored him.

At no time did I refuse medical attention.  Again I begged for a doctor, but someone said there was no doctor on duty at that time.  Every time nurse Saulibio moved my leg I screamed in pain.  It felt like he was driving a large nail into my hip with a hammer.  I was fearful he would do even more damage if he kept pressing on it.  Mr. Saulibio told the guards to take me to my cell.  Two guards I did not recognize moved me onto a stretcher and carried me to my cell door.

As they stood up the stretcher for me to try to stand, one of them said, "I heard him refuse medical attention."  Though I was in extreme agony, I managed to reply sharply: "I said no such thing.  I want to see a doctor.  That is ridiculous and untrue."  I never refused to see a doctor.  The two guards almost pushed me into the room, and ordered my cellmate Michael Peterson to take me to my bunk.  Peterson did so, as one of the officers, a lieutenant, said about me, "He's full of shit."  Then they left and locked the cell door.

I lay in agony all night, with no pain medications and no medical attention.  Every time I tried to move, the pain was so sharp I felt like I was going to die.  I could not get up to go to the toilet, and was forced to lie in my own urine when I had to urinate.  I did not sleep at all.  Other inmates heard my moans that night.

At 7 am the next morning when the cell door was unlocked I begged C.O. De Hoyes to get a doctor.  He said he would do so.  I waited and waited.  When he came again later, I repeated my plea for a doctor.  Several inmates came by to see me, and told me they also begged him for a doctor.  When no doctor came by lunchtime, my cellmate Peterson asked Mr. De Hoyas if he could bring a lunch tray for me.  De Hoyes refused that request, and said, "If Williams wants to eat, he must come downstairs."  I could not even walk across my cell to the toilet, much less down the flight of stairs.  So I had to lie there all day with no food.

Finally, nurse Buckingham arrived and talked to me, saying they would take me to X-ray.  About 1:30 pm C.O. Mr. Ford arrived with a stretcher.  He and some other staff carried me down the stairs, to the elevator, and to medical X-ray.  The X-ray technician told me the X-ray showed that my upper femur was broken in three places.  When I told him what nurse Saulibio said, that nothing was broken, the technician gave a look of disgust and said, "There is no way anyone could tell that without an X-ray."  He said no one should have been moving my leg around, and a nurse should not be making a diagnosis.  At last I understood why I was in so much pain, and that nurse Saulibio was totally wrong.

After that, nurse Smith treated me kindly and called an ambulance.  About two hours later I was taken on a guerney downstairs to an ambulance.  There I saw Mr. Torres again, who was by that time back on duty for the next day.  I complained to him about Saulibio hurting me.

I was taken to White Memorial Hospital and finally seen by a doctor in the emergency room about 4:30 pm.  It was about twenty hours from the time of my injury.  Dr. Gallino performed emergency surgery, to insert a steel rod inside my left femur, with three bolts to attach the three broken parts at the top of my leg.  I was kept in White Memorial Hospital for fifty days.  I remain in a wheelchair to the present.

This injury has been the most painful experience of my life.  I was brought back to MDC Los Angeles on March 19, 2014, and have been given no physical therapy since my return.  When I checked into MDC, nurse Saulibio was on duty.  I asked him if he remembered telling me that "Nothing was broken."  Not only was he not apologetic in the least, but he made an excuse saying, "I could do nothing since you refused medical treatment."  I replied, "That is a lie and you know it."  I asked him if he had my signature refusing medical treatment.  He said nothing.

When I returned to my housing unit at 5 South, a number of inmates told me that many of them were quite disturbed at the treatment I had received from MDC staff.  Inmates Donald Goff, Dr. Joel Dreyer, Michael Peterson, Philip R. Roland, Jonathan Turner, Romie Tucker, John Boone, and others can testify that, not only did I not refuse medical treatment, but I asked to see a

TRULINCS 65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

--------------------------------------------------------------------------------

doctor repeatedly. Several inmates asked the C.O. on duty the next day to take me to the medical center, since I was still lying in pain in my cell and unable to move.

Not only was Mr. Saulibio unresponsive to my complaint when I returned to MDC, but when I asked for my evening pain medication he told me: "The pharmacy is closed, and there is no way that anyone can get any medicines now." About half an hour later nurse Smith brought me medications. Once again Mr. Saulibio showed not the least bit of concern, and in fact told me something that was not true.

On subsequent days I made informal complaints to nurses Smith and Buckingham, and to medical administrator Ms. Devesa. Ms. Devesa promised to get back to me, but after hearing nothing from her I wrote in an email to her on March 22, 2014, Request to Staff, saying: "Please tell me what you are doing regarding the mistreatment of me by nurse Saulibio. What he did to me after my fall was barbaric as well as incompetent." I never received a reply to these informal complaints. The next time Warden Thomas came to my housing unit, I told her what nurse Saulibio did. After hearing no response from her, I told Dr. Sanovsky the same thing. I told him of my fear that Saulibio might try to retaliate against me, and I asked that Mr. Saulibio not be allowed any further interaction with me.

For awhile I did not see nurse Saulibio in my unit, but now he is back. Other inmates complain about his abusive behavior as well. He is a disgrace to the profession of nursing, and does not belong in any position where he has contact with patients.

Seeing no response to my informal complaints, now that I have been recently sentenced I make this request for administrative remedy. I was afraid of retaliation by Mr. Saulibio, and now that I know I will be leaving MDC soon, I am taking this formal action to appeal to the new Warden Mr. Shinn. Nothing has been done despite my informal requests, and this nurse still has his job.

The remedy I wish to seek is a sanction against Michael Saulibio, as well as compensation for the gross negligence, pain and suffering I experienced.

EXHIBIT  5

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

--------------------------------------------------------------------------------

FROM: 65562112
TO: Warden
SUBJECT: ***Request to Staff*** WILLIAMS, WALTER, Reg# 65562112, LOS-E-S
DATE: 12/30/2014 05:31:44 PM

To: 5 south
Inmate Work Assignment: none

Dear Warden:
This email is to let you know that yesterday December 29, I gave to my unit manager Ms. Navarro a BP 9 form for
Administrative Remedy.  Please acknowledge receipt of it when you receive it.
Thank you,
Walter Williams
65562112

EXHIBIT  6

TRULINCS  65562112 - WILLIAMS, WALTER LEE - Unit: LOS-E-S

-------------------------------------------------------------------------------------

FROM: 65562112
TO: Health Service Administrator
SUBJECT: ***Request to Staff*** WILLIAMS, WALTER, Reg# 65562112, LOS-E-S
DATE: 01/03/2015 06:45:53 PM

To: 5 south
Inmate Work Assignment: none

Dear Ms. Devasa:
In March 2014, I spoke with you shortly after I returned from my fifty day stay at White Memorial Hospital, to request an informal resolution from you regarding nurse Michael Saulibio's treatment of me when I fell on January 28 and suffered three fractures in my left femur. When I received no response from you, I wrote you an email copout on March 22, saying: "Please tell me what you are doing regarding the horrid treatment of me by nurse Michael Saulibio. What he did to me after my fall was barbaric as well as incompetent." I never received a response from you regarding this informal complaint.
    Now, in addition to the complaints I have against him in January and March, I learned from other inmates that during pill line on December 28, 2014, Mr. Saulibio referred to me as "a scumbag" and loudly discussed my court case in front of inmates. His obvious purpose was to attempt to incite violence against me.
    I request that he be sanctioned and immediately removed from any interaction with inmates on 5 South housing unit. He is a direct danger to my safety.
    Please respond to this additional request for informal resolution of this issue.
Thank you,
Walter Williams
65562-112

EXHIBIT  7

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Williams, Walter L.__    __65562-112__    __5 south__    __MDC Los Angeles__
        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**

On December 31, 2014 my Administrative Remedy Request # 805988-F1 was rejected. The reason given for rejection was that I did not provide necessary evidence of my attempt at informal resolution. See enclosed description, specifying individuals contacted at attempt for resolution. On January 3, 2015 I again sent an email request to staff at MDC LA, Health Service Administrator Devasa, asking once again for informal resolution. As of this date I have received no response to any of my requests for resolution.

[four copies attached]

__14 January 2015__                     __Walter L. Williams__
     DATE                                  SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____             _____
         DATE                                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: __805988-R1__

**Part C - RECEIPT**

                                                 CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____             _____
         DATE                          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                PRINTED ON RECYCLED PAPER                                 BP-230(13)
                                                                         JUNE 2002

EXHIBIT  8

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 4, 2015


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      WESTERN REGIONAL OFFICE

TO  : WALTER LEE WILLIAMS, 65562-112
      VICTORVILLE USP    UNT: H/O    QTR: A11-101U
      P.O. BOX 5400
      ADELANTO,  CA 92301


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 805988-R1       REGIONAL APPEAL
DATE RECEIVED  : FEBRUARY 2, 2015
SUBJECT 1      : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2      : MEDICAL CARE - DELAY OR ACCESS TO
INCIDENT RPT NO:


REJECT REASON 1: CONCUR WITH RATIONALE OF REGIONAL OFFICE AND/OR INSTITUTION
                 FOR REJECTION. FOLLOW DIRECTIONS PROVIDED ON PRIOR REJECTION
                 NOTICES.

EXHIBIT 9



U.S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Institution

*Englewood, CO 80123*

July 7, 2014

MEMORANDUM FOR M. ALARID, CASE MANAGER

SUBJECT:        Rejection Notice - Administrative Remedy
                WILLIAMS, Walter Lee
                Reg. No. 65562-112

This rejection notice was received at FCI Englewood and given to inmate Williams on July 7, 2015.  This notice was sent from USP Victorville, California.

---

EXHIBIT  19

---

Chronic Care Health Problems

# Bureau of Prisons
# Health Services
# Inmate Local Hospital

| Reg #:  65562-112 | Inmate Name:  WILLIAMS, WALTER LEE |
|---|---|

SENSITIVE BUT UNCLASSIFIED – This information is confidential and must be appropriately safeguarded.

Transfer To:  WMMH 4 NORTH RM 4507          Transfer Date:  01/29/2014

## Health Problems

| Type | Health Problem | Status |
|---|---|---|
| Chronic | Nocturia | Current |
| Chronic | Dyspepsia and other spec disorders (Stomach Pain) | Current |
|  | LACTOSE INTOLERANCE |  |
| Chronic | Polyneuropathy in other diseases classified else | Current |
| Chronic | Latent syphilis, unspecified | Current |
| Chronic | BPH, Benign Hypertophy of Prostate | Current |
| Chronic | Sleep apnea, unspecified | Remission |
| Chronic | Restless legs syndrome (RLS) | Current |
| Chronic | Esophageal reflux | Current |
| Chronic | Other genital herpes | Remission |
| Temporary/Acute | Back, contusion | Current |
| Temporary/Acute | Contusion of face, scalp, and neck except eye(s) | Current |
| Temporary/Acute | Epididymitis and orchitis , unspecified | Current |
|  | associated with a palpable mass on the upper pole of the right testicle |  |
| Temporary/Acute | Pulpitis | Current |
| Temporary/Acute | Other and unspecified hyperlipidemia | Current |
|  | HYPERTRIGLYCERIDEMIA |  |
| Temporary/Acute | Urinary tract infection, site not specified | Current |
| Temporary/Acute | Other medical exam for administrative purposes | Current |
| Temporary/Acute | Dizziness and giddiness | Current |
|  | probably due to new medicine for prostate, Cardura, (Doxazosin) |  |

## Medications:  All medications to be continued until evaluated by a physician unless otherwise indicated. Bolded drugs required for transport.

Acyclovir 400 MG Tab  Exp: 03/26/2014  SIG: Take one tablet by mouth with food twice daily for herpes [Zovirax: antiviral] ***pill line***

| (b)(7)(F) |
|---|

Doxazosin 4 MG Tab  Exp: 03/26/2014  SIG: Take one tablet (4mg) by mouth ONCE each evening for 7 days (9/27-10/3) then---Take one and one-half (1 and 1/2)tablets (6mg) by mouth ONCE each evening for 7 days (10/4-10/10) then---Take two tablets (8mg) by mouth ONCE each evening (start 10/11) for bladder disorder [Cardura] ***pill line***

| (b)(7)(F) |
|---|

Gabapentin 300 MG CAP  Exp: 03/26/2014  SIG: **crush/empty** Take one capsule (300mg) by mouth once each evening for 3 days (9/27-9/29) then---Take two capsules (600mg) once each evening (start 9/30) for restless leg syndrome [Neurontin] ***pill line***

| (b)(7)(F) |
|---|

Pancrelipase 5000/17000/27000 (L/P/A) Unit Cap  Exp: 03/26/2014  SIG: Take one capsule by mouth twice daily after meals as digestive enzyme [Zenpep] ***pill line***

Pravastatin 20 MG Tab  Exp: 03/26/2014  SIG: Take one tablet (20mg) by mouth ONCE each evening for control of triglycerides [Pravachol] ***pill line***

rOPINIRole HCl 4 MG TAB  Exp: 07/09/2014  SIG: Take one tablet (4mg) by mouth once at bedtime for restless legs syndrome [Requip] ***pill line***

## OTCs:  Listing of all known OTCs this inmate is currently taking.
None

## Pending Appointments

| Date | Time | Activity | Provider |
|---|---|---|---|
| 06/20/2014 | 00:00 | Chronic Care Visit | Physician 02 |
| 06/22/2014 | 00:00 | PPD Administration | Nurse |

Generated 01/29/2014 12:09 by Toh, R. MD

**Reg #:** 65562-112                    **Inmate Name:** WILLIAMS, WALTER LEE

SENSITIVE BUT UNCLASSIFIED – This information is confidential and must be appropriately safeguarded.

| <u>Date</u> | <u>Time</u> | <u>Activity</u> | <u>Provider</u> |
|---|---|---|---|
| 09/26/2014 | 00:00 | Chronic Care Visit | Physician 02 |
| 01/29/2014 | 10:57 | Clinical Encounter | Buckingham, M. PA-C |

**TB Clearance:**

Last PPD Date: <u>06/22/2013</u>                    Induration: <u>0mm</u>
Last Chest X-Ray Date: _____                    Results: _____
TB Treatment: _____                    Sx free for 30 days: <u>Yes</u>
TB Follow-up Recommended: <u>No</u>

**Sickle Cell:**

Sickle Cell Trait/Disease:     Not applicable.
                                            <u>FOR ISDS ONLY</u>

**Limitations/Restrictions/Diets:**
Cleared for Food Service: No
LAN Comments: LEFT KNEE SUPPORT/BRACE GIVEN TODAY FOR HX OF PREVIOUS LEFT KNEE DISLOCATION IN 2002 WITH LEFT KNEE SURGERY IN 2005
Sodium Controlled --- 05/21/2014
Other diet restrictions: NO DAIRY PRODUCTS DUE TO LACTOSE INTOLERANCE --- 05/21/2014
Special instructions: NO DAIRY PRODUCTS, LOW SALT DIET

REVISED: CAN HAVE FRUITS, PLS SERVE HIM SOME FRUITS PER REQUEST IF AVAILABLE

LACTOSE INTOLERANCE; BORDERLINE ELEVATED BLOOD PRESSURE
**Comments:**

**Allergies**

Penicillin V

Lactose Intolerance

**Devices / Equipment**
Brace - knee
Eye Glasses

**Travel:**

Direct Travel: <u>No</u>
Travel Restrictions: <u>None</u>

**UNIVERSAL PRECAUTIONS OBSERVED WHEN TRANSPORTING ANY INMATE:**

Transfer From Institution: <u>LOS ANGELES MDC</u>            Phone Number: <u>2134850439</u>
Address 1: <u>535 N ALAMEDA STREET</u>
Address 2: _____
City/State/Zip: <u>LOS ANGELES, California 90012</u>

Name/Title of Person Completing Form: Toh, R. MD            Date: <u>01/29/2014</u>

Inmate Name: <u>WILLIAMS, WALTER LEE</u>     Reg #: <u>65562-112</u>   DOB: <u>11/03/1948</u>   Sex: <u>M</u>

---

EXHIBIT  20

---

List of Clinical Encounters

# Bureau of Prisons
# Health Services
# Vitals All

| | |
|---|---|
| **Begin Date:** 02/03/2013 | **End Date:** 02/03/2014 |
| **Reg #:** 65562-112 | **Inmate Name:** WILLIAMS, WALTER LEE |

## Temperature:

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|------|------|------------|---------|----------|----------|
| 01/29/2014 | 12:54 LOS | 98.7 | 37.1 | | Buckingham, M. PA-C |
| | Orig Entered: 01/29/2014 15:56 EST | | | Buckingham, M. PA-C | |

## Pulse:

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|------|------|-----------------|----------|--------|----------|
| 01/29/2014 | 12:54 LOS | 79 | | | Buckingham, M. PA-C |
| | Orig Entered: 01/29/2014 15:56 EST | | Buckingham, M. PA-C | | |
| 10/07/2013 | 11:54 LOS | 98 | Via Machine | Regular | Knight, N. NP/IOP/IDC |
| | Orig Entered: 10/07/2013 14:56 EST | | Knight, N. NP/IOP/IDC | | |
| 09/26/2013 | 12:22 LOS | 80 | Via Machine | Regular | Toh, R. MD |
| | Orig Entered: 09/26/2013 15:24 EST | | Toh, R. MD | | |
| 06/27/2013 | 13:23 LOS | 64 | Via Machine | Regular | Toh, R. MD |
| | Orig Entered: 06/27/2013 16:25 EST | | Toh, R. MD | | |
| 06/21/2013 | 07:06 LOS | 84 | Via Machine | Regular | Toh, R. MD |
| | Orig Entered: 06/21/2013 10:08 EST | | Toh, R. MD | | |
| 06/21/2013 | 06:53 LOS | 84 | | | Jamil, M. MLP |
| | Orig Entered: 06/21/2013 09:55 EST | | Jamil, M. MLP | | |

## Respirations:

| Date | Time | Rate Per Minute | Provider |
|------|------|-----------------|----------|
| 01/29/2014 | 12:54 LOS | 20 | Buckingham, M. PA-C |
| | Orig Entered: 01/29/2014 15:56 EST | | Buckingham, M. PA-C |
| 10/07/2013 | 11:54 LOS | 22 | Knight, N. NP/IOP/IDC |
| | Orig Entered: 10/07/2013 14:56 EST | | Knight, N. NP/IOP/IDC |
| 09/26/2013 | 12:22 LOS | 20 | Toh, R. MD |
| | Orig Entered: 09/26/2013 15:24 EST | | Toh, R. MD |
| 06/27/2013 | 13:23 LOS | 20 | Toh, R. MD |
| | Orig Entered: 06/27/2013 16:25 EST | | Toh, R. MD |
| 06/21/2013 | 07:06 LOS | 20 | Toh, R. MD |
| | Orig Entered: 06/21/2013 10:08 EST | | Toh, R. MD |

## Blood Pressure:

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|------|------|-------|----------|----------|-----------|----------|
| 01/29/2014 | 12:54 LOS | 129/73 | Left Arm | Lying | Adult-regular | Buckingham, M. PA-C |
| | Orig Entered: 01/29/2014 15:56 EST | | Buckingham, M. PA-C | | | |
| 10/07/2013 | 11:54 LOS | 153/83 | Left Arm | Sitting | Adult-regular | Knight, N. NP/IOP/IDC |
| | Orig Entered: 10/07/2013 14:56 EST | | Knight, N. NP/IOP/IDC | | | |
| 09/26/2013 | 12:22 LOS | 117/81 | Right Arm | Sitting | Adult-regular | Toh, R. MD |
| | Orig Entered: 09/26/2013 15:24 EST | | Toh, R. MD | | | |
| 06/27/2013 | 13:23 LOS | 116/76 | Right Arm | Sitting | Adult-regular | Toh, R. MD |
| | Orig Entered: 06/27/2013 16:25 EST | | Toh, R. MD | | | |
| 06/21/2013 | 07:06 LOS | 133/84 | Right Arm | Sitting | Adult-regular | Toh, R. MD |
| | Orig Entered: 06/21/2013 10:08 EST | | Toh, R. MD | | | |

**Begin Date:** 02/03/2013
**End Date:** 02/03/2014
**Reg #:** 65562-112
**Inmate Name:** WILLIAMS, WALTER LEE

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|------|------|-------|----------|----------|-----------|----------|
| 06/21/2013 | 06:53 LOS | 133/84 | | | | Jamil, M. MLP |
| | Orig Entered: 06/21/2013 09:55 EST | | Jamil, M. MLP | | | |

**Blood Glucose:**

| Date | Time | Value (mg/dl) | Type | Regular Insulin | Provider |
|------|------|---------------|------|-----------------|----------|
| 06/27/2013 | 13:23 LOS | 85 | Non-Fasting | | Toh, R. MD |
| | Orig Entered: 06/27/2013 16:25 EST | | Toh, R. MD | | |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|------|------|----------|-----|----------|
| 01/29/2014 | 12:54 LOS | 99 | | Buckingham, M. PA-C |
| | Orig Entered: 01/29/2014 15:56 EST | | Buckingham, M. PA-C | |
| 06/21/2013 | 07:06 LOS | 98 | Room Air | Toh, R. MD |
| | Orig Entered: 06/21/2013 10:08 EST | | Toh, R. MD | |

**Height:**

| Date | Time | Inches | Cm | Provider |
|------|------|--------|-----|----------|
| 09/26/2013 | 12:22 LOS | 68.9 | 175.0 | Toh, R. MD |
| | Orig Entered: 09/26/2013 15:24 EST | | | Toh, R. MD |
| 06/21/2013 | 07:06 LOS | 68.0 | 172.7 | Toh, R. MD |
| | Orig Entered: 06/21/2013 10:08 EST | | | Toh, R. MD |
| 06/21/2013 | 06:53 LOS | 68.0 | 172.7 | Jamil, M. MLP |
| | Orig Entered: 06/21/2013 09:55 EST | | | Jamil, M. MLP |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|------|------|-----|-----|---------------|----------|
| 09/26/2013 | 12:22 LOS | 185.0 | 83.9 | | Toh, R. MD |
| | Orig Entered: 09/26/2013 15:24 EST | | | Toh, R. MD | |
| 06/21/2013 | 07:06 LOS | 174.6 | 79.2 | | Toh, R. MD |
| | Orig Entered: 06/21/2013 10:08 EST | | | Toh, R. MD | |
| 06/21/2013 | 06:53 LOS | 174.6 | 79.2 | | Jamil, M. MLP |
| | Orig Entered: 06/21/2013 09:55 EST | | | Jamil, M. MLP | |

BOP 16-04237 Medical 99 of 448

---

EXHIBIT  21

---

AFFIDAVIT:  Plaintiff's Recent Hospitalization
Substantially Disrupted His Ability to
Complete this Verified Complaint