

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CASE NUMBER: **CV17-3040-ODW(FFMx)**

**WALTER LEE WILLIAMS,**
Plaintiff,

vs.

**UNITED STATES OF AMERICA,**
et al.,
Defendants.

## VERIFIED AFFIDAVIT

**WALTER LEE WILLIAMS**
Inmate No. - 65562-112
FCI - Englewood
9595 West Quincy Avenue
Littleton, Colorado 80123
303-763-4300
**PRO SE REPRESENTATION**

**WALTER LEE WILLIAMS**
Inmate No. - 65562-112
FCI - Englewood
9595 West Quincy Avenue
Littleton, Colorado 80123
**PRO SE REPRESENTATION**

                IN THE UNITED STATES DISTRICT COURT
           FOR THE CENTRAL DISTRICT OF CALIFORNIA
                      EASTERN DIVISION

| | |
|---|---|
| WALTER LEE WILLIAMS, <br>         - Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br>         et al., <br>         - Defendants. | Case No. _____ <br><br><br><br> **VERIFIED AFFIDAVIT** |

                  PLAINTIFF'S VERIFIED AFFIDAVIT
            IN SUPPORT OF CIVIL RICO/CONSPIRACY
       COMPLAINT AGAINST FEDERAL AND PRIVATE ACTORS

WALTER LEE WILLIAMS deposes the following as an **AFFIDAVIT**:

**AN AFFIDAVIT IS PRIMA FACIE EVIDENCE.**

    "Indeed, no more than [an Affidavit] is necessary to make the prima facie case." United States v. Kis, 685 F.2d 526 (7th Cir. 1981). "Moreover, the threshold of relevance is a low one." Id. at 537. "The burden is therefore on the Respondent who must come forward with special facts to support a legally sufficient rebuttal or defense." Id. at 538-39.

    1.   I, **WALTER LEE WILLIAMS**, the **pro se** Prisoner - Plaintiff in the above styled case, certifies that I am of age of majority, with first-hand knowledge

of the events deposed herein, with a sound mind, and thus, capable to bring this **VERIFIED AFFIDAVIT** before this Honorable Court, without attempting to be vexatious or hinder any lawful process.

2. That the following is a true and correct statement of facts, tendered to support Plaintiff's **VERIFIED COMPLAINT**; and to assist a Jury and this tribunal of the factual circumstances which occurred during the offense conduct period to which Plaintiff's **VERIFIED COMPLAINT** relates, to wit:

3. That I am the Plaintiff in the above styled cause of action that has not yet been assigned a Case Number.

4. That I am proceeding in the above entitled cause of action as a **pro se** Prisoner - Plaintiff, and in an **in forma pauperis** status.

5. That I am not attempting to be vextious, or to hinder any lawful action or process.

6. That the facts and claims averred to in my **VERIFIED COMPLAINT** are true, correct, complete; and to those matters of belief, believe them to be true.

7. That the Defendant(s) numerated within my **VERIFIED COMPLAINT** did, in fact and indeed, perpetrate the injuries claimed and did, in fact and indeed, conspire to injure me -- as a **RICO "Enterprise"** -- as averred to within my **VERIFIED COMPLAINT** in diverse ways; and that I am seeking redress for those injuries I sustained in this cause of action at the hands of said RICO Enterprise co-conspirator Defendant(s).

8. That for several weeks in September 2013, Plaintiff was continually harassed by inmate Defendant Omar Kevir.

9. That after weeks of harassment, a written death threat was communicated against me by inmate Defendant Omar Kevir.

10. That the stated reason I was continually harassed and a written death threat was made by inmate Defendant Kevir -- a devout Muslim Extremist -- was because of the fact I am an openly gay man, because I am a Buddhist, and because

2

of my charges.

11. That Defendant Captain Morales was in possession of inmate Defendant Kevir's written death threat; thus, Defendant Morales did, in fact, have full knowledge of said death threat against me.

12. That, based on many weeks of harassment I received from inmate Defendant Omar Kevir, I had no reason not to believe Kevir was serious with his written death threat against me; thus, I was in a constant state of fear of serious bodily harm.

13. That I had expressly informed Defendant Captain Morales of my concerns for my personal safety and well being.

14. That I was informed and assured by Defendant Captain Morales that the Staff at Metropolitan Detention Center - Los Angeles ("MDCLA") would protect me, when in fact, they did not.

15. That I asked, out of fear for my personal safety and well being, that inmate Defendant Omar Kevir be moved from the 8th floor of MDCLA; yet, **Kevir** was not moved inspite of the threats and continual harassment.

16. That after the written death threat was made, harassment by inmate Defendant Omar Kevir escalated.

17. That repeated complaints of my concerns about the continued harassment and threats made by inmate Defendant Omar Kevir were made to Defendant(s) Thomas, Young, Unidentified Lieutenant #1, Proctor, and others.

18. That Defendant(s) Thomas, Young, Unidentified Lieutenant #1, Proctor, and others -- along with Defendant Captain Morales -- all had knowledge of said written death threat made by inmate Defendant Omar Kevir.

19. That Defendant(s) Thomas, Morales, Young, Unidentified Lieutenant #1, Proctor, and others, had knowledge of said continued harassment and threats made by inmate Defendant Omar Kevir.

20. That after expressing concerns for my personal safety and well being, and subsequent to asking that inmate Defendant Kevir be moved from the 8th floor of MDCLA -- the supposed "protective custody" floor of MDCLA -- Unidentified Lieutenant #1 told me "Nothing can be done to Omar Kevir until he actually touches you," or words to that effect.

21. That prior and subsequent to the verbal and written threats made by inmate Defendant Omar Kevir, Defendant Estrada had on several occasions verbally assaulted me simply because I am an openly gay man and because of my charges.

22. That Defendant(s) Thomas, Morales, Young, Unidentified Lieutenant #1, Proctor, Estrada, and other MDCLA staff failed to protect me -- a basic duty and fundamental responsibility of MDCLA staff is the safety and security of the facility - to include inmate safety -- after I had not only been informed, but assured, by Defendant Captain Morales that I would be safe and protected; that MDCLA staff would protect me from inmate Defendant Omar Kevir, a violent Muslim Extremist; and the aforementioned MDCLA staff, herein listed as Defendant(s), failed to protect me or to keep me safe.

23. That, because of continued threats and harassment from inmate Defendant Omar Kevir, coupled with the continual verbal assaults and harassment from MDCLA staff, I remained in a constant state of fear, notwithstanding the assurances I had received from Defendant Captain Morales.

24. That my worst fears were realized when, at approximately 11:25 a.m. on October 7, 2013, I was severely, savagely, and brutally beaten at the hands of inmate Defendant Omar Kevir.

25. That the brutal attack I received at the hands of inmate Defendant Omar Kevir was not simply some sort of random, unplanned, impulsive, split-second, or spontaneous act; but rather, a well planned, purposeful, deliberate, and very well coordinated attack; an attack that was planned in advance by the civil

RICO Enterprise co-conspirator Defendant(s); and an attack that each of the civil RICO Enterprise co-conspirator Defendant(s) participated in -- either directly or indirectly -- and an attack that each civil RICO Enterprise co-conspirator Defendant(s) had knowledge of before the brutal attack took place.

26. That prior to being harassed by inmate Defendant Omar Kevir, I had personally noticed that Kevir was being housed in a two man cell by himself; that I asked Kevir why he didn't have a cell mate; and that I was told by inmate Defendant Kevir that "They will not let me have a cell mate because I am considered to be violent," or words to that effect.

27. That each of the civil RICO Enterprise co-conspirator Defendant(s) knew prior to the onset of the harassment, written death threat, and brutal beating that inmate Defendant Omar Kevir was an extremely violent person, as evidenced by the fact he was housed in a two man cell by himself; yet, in spite of this knowledge, each civil RICO Enterprise co-conspirator Defendant(s) failed to protect me from a brutal beating perpetrated by inmate Defendant Omar Kevir.

28. That civil RICO Enterprise co-conspirator Defendant Young was on duty on the 8th floor of MDCLA when I was attacked and brutally beaten by inmate Defendant Omar Kevir.

29. That Defendant Young was observed by other inmates on the 8th floor of MDCLA walking very slowly across the floor of the common area from his office toward the cell of inmate Jose Flores -- an inmate I was visiting and a witness to the attack -- which was the location of the brutal beating I had received.

30. That when Defendant Young arrived at the cell of inmate Jose Flores, other inmates overheard Young, in a clear and calm voice, ask inmate Defendant Omar Kevir, "Are you finished?"

31. That I was severely beaten about the left side of my head, left ear, upper body, and that my left wrist was injured by the beating I received from

5

inmate Defendant Omar Kevir.

32. That I was knocked off my feet and unconscious by the brutal beating I received from inmate Defendant Omar Kevir.

33. That when I regained consciousness I was disorientated and felt intense throbbing pain.

34. That during a very brief stay at the MDCLA medical unit I was interviewed by an unidentified Corrections Officer; that I explained what happened; and that the C.O. stated he believed me.

35. That I was not given so much as an ice-pack for injuries from the brutal beating I had received, was taken to X-ray, experienced abuse from Defendant Estrada, and was taken to the Segregation Housing Unit ("SHU").

36. That I was concerned about an injury to my wrist, told Defendant Estrada about the concern and injury, and that Estrada made the handcuffs tighter on my wrists, further hurting me.

37. That upon arrival at the SHU, Defendant Estrada announced that I was a new arrival from the 8th floor -- the purported "protective custody" floor. This announcement instilled panic and fear in me until the very day I was released from the SHU.

38. That I was placed in the SHU without receiving any legitimate medical care whatsoever. Whatsmore, while in the SHU for a period of approximately three (3) weeks, I was seen by no one from the MDCLA medical department; that I was left to treat myself after receiving blunt force trauma to my head.

39. That subsequent to the brutal attack and medical neglect, for months I experienced recurring feelings of fear, tenseness, and anxiety -- including panic and anxiety attacks. That these conditions were exacerbated when, in December of 2013, an inmate two (2) cells down from me was severely beaten simply because, he too, was gay.

40. That for months subsequent to the brutal attack and beating, I

6

experienced severe headaches, often felt dizzy with loss of balance, experienced increased sensitivity to light, difficulty concentrating, and experienced slowed thinking along with forgetfulness; and that, to this day, I continue to experience each one of these after-effects of the severe beating I had received at the hands of inmate Defendant Omar Kevir.

41. That I believe the connection between the MDCLA staff Defendant(s) and inmate Defendant Omar Kevir, all as civil RICO Enterprise co-conspirators, is the statement Defendant Young made when asking Kevir "Are you finished?" with the brutal beating as Young walked up to Flores' cell door; and by the fact MDCLA staff failed to protect me after they had knowledge of Kevir's threats against me.

42. That I believe Defendant(s) Morales and Young, because of their positions, actions and inactions, and knowledge of inmate Defendant Omar Kevir's threats were leaders/organizers of a civil RICO Enterprise conspiracy and allowed Hate Crime Acts to be carried out against me by inmate Defendant Omar Kevir, other Defendant(s), including themselves.

43. That I believe the actions and inactions of the foregoing civil RICO co-conspirators, because of my fear for my personal safety and well being, was cause for what happened on January 28, 2014 -- when I fell on a wet concrete floor of the cell block I was assigned to. That had I not been in constant fear for my personal safety and well being, I would have been looking down as I walked, not up, around, and behind me. That because of this constant fear I did not see the puddle of water on the floor that caused me to slip and fall, a fall that broke my left femur in three (3) places.

44. That immediately after the fall, I knew something was seriously wrong. That within seconds of my fall, C.O. Torres (not a Defendant) was at my side and called for medical assistance.

45. That Defendant Saulibio, a nurse at MDCLA, arrived and shouted for me to "Get up!" That, however, I could not get up, and that in fact, because of the intense pain, I could not even move.

46. That Defendant Saulibio began pressing very hard at the top of my left leg and hip area, causing the intense pain to sharpen to the point that I nearly blacked out. That I begged Saulibio to stop hurting me, but he did not stop.

47. That next, Defendant Saulibio grabbed my left leg at the ankle and raised, twisted, pulled, and pushed on it in an obviously cruel, barbaric, and sadistic fashion, again causing more severe pain. That I, again, begged Saulibio to stop hurting me and inflicting pain upon me in such an inhumane manner. That Defendant Saulibio did not heed my cries and did not stop hurting me.

48. That I vividly recall Defendant Saulibio saying my femur was "checked" and that it "is not broken. It's only a sprain." And that, thus, that was the end of the examination. That I was not taken to the medical department for a follow-up examination; that I received no X-rays of my left leg at the time; that I was not seen by a doctor; nor was I taken to a hospital.

49. That instead of receiving competent medical care I was placed on a stretcher and taken to my cell, where I was essentially dumped off it into my cell, and where I was literally carried to my bed by my cellmate, inmate Michael Peterson.

50. That once placed in my bed, with the pain getting more intense by the minute, I laid there in agony all night long without any medical attention whatsoever. The pain was so severe that every time I tried to move, just the slightest, intense pain shot throughout my entire body.

51. That because of the intense pain I could not sleep -- all I could do was lie there and scream and cry all night long. That I also could not get up to use the toilet. This fact caused me to urinate on myself several times;

8

thus, I was forced to lie in my own urine and wet bedding for the next seventeen (17) hours.

52. That because of the medical neglect I was forced to experience prolonged, excruciating, and unnecessary pain; and, I was forced to live in unhealthy, unsanitary, and dehumanizing conditions that were also extremely humiliating. What I was exposed to, after sustaining a very serious injury, was clearly cruel and unusual punishment that was tantamount to torture.

53. That I believe these torturous acts were organized by the civil RICO co-conspirators, with Defendant Saulibio as an additional leader/organizer, with the purpose of committing a Hate Crime Act against me because of my sexual orientation.

54. That during the period of time subsequent to the injury I had not received any medication for pain. That by the next morning, I still had not been seen by a medical doctor, after repeated requests, and cries, to be seen by one.

55. That because of my inability to move I was unable to go downstairs to eat breakfast; and, that the last time I had eaten was approximately 5:00 p.m. on the evening before.

56. That around 11:30 a.m., on Wednesday, January 29, 2014, my cell mate, inmate Michael Peterson, attempted to bring me some lunch, but the C.O. on duty at the time would not allow him to so so, and was advised that if I wanted to eat I would have to come downstairs, even though I still could not move because of the intense pain. That I was also still lying in my own urine. That, essentially, I had been denied medical attention, medication, food, and humane living conditions for over eighteen (18) hours thus far -- forced to live in all forms of inhumane treatment and torture.

57. That at approximately 1:30 p.m., on January 29, 2014, C.O. Ford (not

a defendant) arrived at my cell with a stretcher and took me to the medical department for an X-ray. That it was then, at X-ray, that I learned my left femur had been broken in three (3) places.

58. That my left leg had not been immobilized since the injury, and that I now knew what was wrong and why the pain was so intense. That I was thereafter taken to White Memorial Hospital by ambulance.

59. That I was admitted to the hospital, was medicated for the pain, and that a couple days later I had surgery where a steel rod and bolts were used to repair my broken femur.

60. That subsequent to the surgery, I undertook extensive and painful physical therapy. That I was hospitalized for approximately fifty (50) days; and that on March 19, 2014, I was released from the hospital and returned to MDCLA. That while at White Memorial Hospital I received excellent, professional, and competent medical care.

61. That my injury -- where my left femur was broken in three (3) places -- was the most painful experience of my life. That this experience was also the most humiliating and dehumanizing experience of my life. That for over twenty (20) hours I received no medical attention by MDCLA staff, no pain medication, no food, was forced to lie in my own urine, and that I was forced to endure extreme pain -- all with a broken femur.

62. That I believe that the inhumane living conditions I was forced to endure, and the deprivation of urgently needed medical attention, was intentionally inflicted by the Defendant(s) I have named in my Verified COmplaint because of my sexual orientation; and that these mistreatments are Hate Crime Acts.

63. That I believe the actions and inactions of Defendant(s) I have named are intentional acts and omissions with total disregard to my fundamental human rights.

64. THat I believe the way I was, and was not, treated clearly constitutes cruel and unusual punishment.

65. That it is not possible for me to adequately describe the amount or extent of physical, emotional, or psychological pain, anguish, and dehumanizing humiliation I suffered as a result of the severe beating I received; and the blatantly egregious medical neglect I endured after I fell and my left femur was broken in three (3) places.

66. That the beating I received was so severe I still suffer effects to this day. That the broken femur and the subsequent medical neglect was so severe that my femoral artery could have been severed at any moment by the slightest movement, and that I could have bled to death in a matter of minutes if that had happened. I believe that the incident of October 7, 2013, and the incident of January 28, 2014, are inter-related.

67. I believe that Hate Crime Acts were committed, by the named and unnamed civil RICO co-conspirators, solely because I am a gay man, because of my Buddhist religion, and because of my charges. That named Defendant(s) knew what Defendant Kevir's intentions were and failed to protect me. That named and unnamed Defendant(s) knew I was seriously injured by the beating and by the fall, yet, failed to provide me with necessary medical care.

68. That I also believe the named and unnamed Defendant(s) should be held personally liable for their respective actions and inactions.

**VERIFICATION**

69. I **WALTER LEE WILLIAMS**, hereby affirm under penalty of perjury, that the foregoing is verified as being true, correct, and complete; and that as to those matters of belief, believe them to be true, pursuant to 28 U.S.C. §1746.

Further Affaint Sayeth Naught.

EXECUTED, at FCI – Englewood, Littleton, Colorado, on the ___11___ day of ___April___, 2017.

_____
Walter L. Williams
Inmate No. – 65562-112
FCI – Englewood
9595 West Quincy Avenue
Littleton, Colorado 80123
303-763-4300
**PRO SE REPRESENTATION**

---

SUBSCRIBED AND SWORN TO BEFORE ME on this ___11th___ day of ___April___, 2017.

(SEAL)
AMANDA L. VARGAS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20104003392
MY COMMISSION EXPIRES FEBRUARY 17, 2018

_____ (Signed)

Amanda L. Vargas _____ (Printed Name)