FILED
CLERK, U.S. DISTRICT COURT
JAN 11 2018
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

Walter Lee Williams

1932 S. Barona Road

Palm Springs CA 92264

The Honorable Otis D. Wright, II

United States District Court Judge

United States Courthouse

350 West First Street

Los Angeles CA 90012


Walter Lee Williams v. United States of America, et al.

Case No. 2:17-cv-03040-ODW (FFMx)


OPPOSITION TO THE MOTION TO DISMISS

This statement is Walter Lee Williams' ("Plaintiff") opposition to the U.S. Attorneys' motion to dismiss the suit, based on procedural grounds. This statement will follow the form of organization contained in the U.S. Attorneys' "Memorandum of Points and Authorities" dated November 3, 2017.


I. **Introduction**

The Memorandum states that Plaintiff failed to raise claims in the Bureau of Prisons administrative process, and that those claims are beyond the statute of limitations. It says that Plaintiff did not distinguish what allegations are made against which parties. In the alternative, the Motion to Dismiss states that Plaintiff submitted the documents for service to the U.S. Marshal before paying the required fee, and therefore service and summons should be quashed.

1

## II. **Statement of Facts**

### A. **Plaintiff's Factual Allegations**

The Motion to Dismiss does not dispute or deny the factual existence of the October 7, 2013 attack on the plaintiff, or the January 28, 2014 serious injuries sustained from the Slip and Fall, or the lack of medical care provided by Bureau of Prisons staff after both of these incidents.

### B. **Plaintiff's Administrative Claim**

The Motion to Dismiss states that nowhere in the Standard Form 95 to the Bureau of Prisons regarding the January 2014 Slip and Fall "does Plaintiff address the October 2013 attack." In response, it must be pointed out that the BOP Standard Form 95 allows less than one page to describe the incident, and that entire space was taken up in describing the negligent and malicious actions of BOP staff after the slip and fall. Statements by witnesses to Plaintiff's mistreatment were also submitted. To dismiss the suit on this basis is insufficient and fallacious.

### C. **Procedural History**

The Motion to Dismiss refers to Magistrate Judge Frederick Mumm's order on May 26, 2017, stating that "service of the complaint should only be effected after plaintiff has paid the partial filing fee" of $92.21. Since Plaintiff was incarcerated at that time at Englewood Federal Corrections Institution in Colorado, he telephoned his mother, Mrs. Opal C. Williams, and asked her to send a Postal Money Order to the Court, which she did on May 10, 2017.

See EXHIBIT A: On Opal C. Williams Chase Bank checking account statement, page 1 shows the Transaction History dated 05/10/2017 Debit Card to USPS [United States Postal Service] Debit for $93.41, which includes a USPS service fee of $1.20 for the Money Order of $92.21 sent to the Court. Page 3 of the same bank statement also shows the Transaction Detail dated 05/10 card purchase to USPS for $93.41.

Since Plaintiff was prevented from using email, he could not know what was happening with the Court Records Office. When he received a letter on June 1, 2017, at the Las Vegas GeoCare Halfway House, where he had been transferred on

May 16, stating that the filing fee was due by June 3, he immediately telephoned his friend Mr. Lyle Henry and asked him to make sure the Money Order paying the required filing fee had been received. After making several telephone calls to find out who was responsible, on June 1, 2017 Mr. Henry sent an email to Dion Mitchell, Clerk of the U.S. Court, stating that a Postal Money Order for $92.21 was mailed dated May 10, 2017.

See EXHIBIT B   Clerk Mitchell replied by email using his email address Dion_Mitchell@cacd.uscourts.gov the same day at 4:08pm, stating that he had contacted Clerk Fernando Ramos in the Court Records Office. In response to Mitchell's inquiry, Ramos stated "We received it…. It does indicate it was postmarked on 5/10." It evidently had been delayed in the mail. Quoted from attached email, marked EXHIBIT B.

Therefore, since the Money Order was paid for and mailed on May 10, and both EXHIBITS A and B prove that the Money Order was charged to Opal Williams' bank account, and also that it was received by the Court before the June 3 deadline, it did in fact comply with Magistrate Judge Mumm's order.

In addition, Plaintiff never received any further statement from the Court about any problem with the fee. If he had received any other request for the filing fee he would have made sure it was paid, but after learning from Mr. Henry about the Money Order's receipt from Court Clerk Dion Mitchell, he was satisfied that his requirement had been met. He had no knowledge that the fee was an issue until reading about it in the U.S. Attorneys' November 3 Motion to Dismiss. Plaintiff cannot be held responsible for any delay in receipt of the Money Order, if it was delayed by the U.S. Postal Service. The filing fee was paid on May 10, 2017.

Not only does Plaintiff's prompt payment on May 10th cancel this fraudulent grounds for dismissal by the U.S. Attorneys, but Service of Summons to all defendants should never have been delayed, and should be carried out immediately. The fact that the U.S. Attorneys" office has incorrect information on this matter, and that they were sloppy in their investigation, is evident. This should give pause to the Court about all other assertions made in their Motion to Dismiss.

## III. Argument

### A. Plaintiff's claims regarding the October 2013 attack.

The Motion to Dismiss asserts that "the Court lacks jurisdiction over Plaintiff's claims relating to the October attack because those claims were not included in the administrative claim Plaintiff submitted to the BOP." The U.S. Attorneys' Memorandum does not dispute the fact that Plaintiff pursued all available administrative remedies available to him within the restrictions imposed by the Bureau of Prisons. To quote the wording of this Motion: "One of the conditions for waiver of the United States' sovereign immunity under the FTCA is that a plaintiff present his or her claim to the appropriate federal agency for resolution before filing an action in district court. 28 U.S.C. s 2675(a)." In this case, the Plaintiff clearly did so, after it became clear in the delay of twenty hours between the time of Plaintiff's slip and fall, and when he was seen by a doctor at White Memorial Hospital, that there was a systematic effort by BOP staff to ignore serious injuries to Plaintiff.

Therefore, it is not right or just for the United States to claim sovereign immunity in this clear violation of Plaintiff's civil rights.

### B. Plaintiff's claims regarding the January 2014 Slip and Fall

Plaintiff pursued administrative remedies with the Bureau of Prisons at all levels. He kept waiting for a response from the national level, and never received a response. In the meantime, Plaintiff was transferred from Englewood FCI in Colorado to the Federal Transfer Center at Oklahoma, and then to Butner FCI in North Carolina for medical treatment, and then back again to Oklahoma and then to Englewood FCI, before being sent to the Las Vegas GeoCare Halfway House on May 16, 2017. With all this moving, plus the inability to get to medical records and legal mail which were delayed for long periods in shipment on every move, it was impossible for Plaintiff in his poor medical condition to do the work on the suit any faster than was done. Plaintiff was also denied access to a computer, so this suit was typed by hand on an old-fashioned typewriter which was available only for limited hours and often broke down, These are the realities that prisoners are forced to endure, which greatly limits the ability to get legal work done.

## C. The Complaint fails to provide a "short and plain statement."

Since Plaintiff is not an attorney, and has never filed a court suit before, the Plaintiff apologizes for any unclearness and appeals to the Court to understand that this Complaint might not be in wording that meets the high standards of the well-trained attorneys working for the government. Plaintiff was under the impression that legal citations provided support for the complaint, so if this is not the case then Plaintiff begs the pardon of the Court.

Regarding the names of defendants, Plaintiff did the best he could, not being able to learn the names of some of the BOP officers on duty. That should not be a limitation for investigators, since a record of which staff were on duty at a particular day and time should be part of the records of the Bureau of Prisons. It is impossible for an inmate to learn the names of all staff who were present at a particular time, particularly in this case when the Plaintiff was in extreme pain and unable to move, with a hip that was fractured in three places. It should be the responsibility of government investigators, not an inmate, to locate staff records and identify particular persons who were on duty.

The Plaintiff appeals to the Court to order an investigation and identify the individual staff members who are not named. What they did in this case of violation of basic civil rights should not be ignored just because Plaintiff does not know their names.

Plaintiff was particularly upset to receive a form from the U.S. Marshal (signature unreadable) dated 9-21-17 that stated "BOP defendant Rick Young is Retired. No forwarding info provided." This is the Corrections Officer who was on duty on October 7, 2013, when Plaintiff was beaten unconscious, and who witnesses said took no action to protect Plaintiff or compel the attacker to stop doing the beating. Since Mr. Young has been a longtime federal employee, and is no doubt receiving a government pension, it is hard to believe that the U.S. Marshals could not locate this corrections officer if they really wanted to do so.

The nurse Michael Saulibio, who was particularly cruel and sadistic to the Plaintiff, should also not escape investigation by the Court.

**D. In the alternative, the U.S. Attorneys assert that Plaintiff's service violated the Magistrate Judge's order.**

This claim by the U.S. Attorney is false, and was addressed earlier, but it will be summarized here. As proved in the Chase Bank statement in EXHIBIT A, on May 10, 2017, Plaintiff's mother, Opal C. Williams, paid the U.S. Postal Service for a Money Order for $92.21 [plus a $1.20 USPS fee]. As proved in EXHIBIT B, after evidently being delayed in the mail, that Money Order was received by the Clerk of the Court on June 1, 2017, two days before the June 3, 2017 deadline.

Since Plaintiff knew the Money Order had been received, he was in compliance with Magistrate Judge Mumm's May 26, 2017 order, stating that "service of the complaint should only be effected after plaintiff has paid the filing fee" of $92.21. Plaintiff's mother paid that fee on May 10, 2017.

Plaintiff had no knowledge that the fee was an issue until reading about it in the U.S. Attorneys' November 3, 2017 Motion to Dismiss. Not only does this fact cancel this fraudulent grounds for dismissal, but Service of Summons to all defendants should never have been delayed, and should be ordered immediately. The fact that the U.S. Attorneys" office has incorrect information on this matter should give pause to the Court about all other assertions made in the Motion to Dismiss.

If Plaintiff may respectfully call attention to this attempt by the U.S. Attorneys, surely the Court is not surprised that they would file a Motion to Dismiss on procedural grounds. The Court is without a doubt aware that ever since the passage of the Prison Litigation Reform Act (PLRA) in 1996, such procedural motions are commonly used by government attorneys to quash legitimate suits brought by prisoners who have been wronged by government fellow employees.

In arguing for passage of this PLRA, Senator Orrin Hatch (R-Utah) assured Congress that the act's purpose was to "quickly identify the viable prisoner claims and weed out the meritless chaff." Testifying before Congress in 2008, the main designer of the PLRA, Sarah Hart, stated that the PLRA "has substantially reduced the number of meritless inmate lawsuits" while preserving "the full power of the federal courts to remedy constitutional violations."

However, the Court is aware that many legal scholars dispute her assertion that the PLRA has identified viable prisoner claims and remedied constitutional violations of prisoners' rights. For example, law professors Kitty Calavita and Velerie Jenness wrote in their book *Appealing to Justice* that the PLRA has, far from preserving prisoners' civil rights, on the contrary produced "a system fraught with impediments and dilemmas that delivers neither justice, nor efficiency, nor constitutional conditions of confinement."

Legal researchers at the University of California, Irvine, found that only two percent of prisoners' grievances filed in California between 2005 and 2006 were "granted in full" at the first level of review.

Margo Schlanger, professor of law at the University of Michigan, who is widely considered the leading authority on the PLRA, estimates that the number of federal lawsuits by inmates against prisons has fallen by sixty percent in the twenty years since the PLRA's passage. She points out that if inmates miss a filing deadline or trip over some other procedural hurdle, they have lost their right to relief through both the grievance process and the federal courts. "The preservation of prisoners' civil rights now depends on their ability to dot i's and cross t's," she said recently.

An article "Why It's Nearly Impossible for Prisoners to Sue Prisons," published in *The New Yorker* (June 2016) [and from which the above quotes are taken], states that the main effect of the PLRA has been to "create a tangle of administrative procedures that discourage or disqualify inmates from filing lawsuits." The article concludes that the PLRA "makes it nearly impossible for inmates to get a fair hearing in court" and "has crippled the federal judiciary's ability to act as a watchdog over prison conditions…. In the two decades since the law's passage, many prisons' procedures have become so onerous and convoluted—'Kafkaesque,' in the words of one federal judge—that inmates whose rights have been violated are watching their cases slip through the cracks."

This is exactly the tactic now being proposed by the U.S. Attorneys, in begging the Court to dismiss this suit. It is without question that in this case all the administrative remedies were exhausted within the Bureau of Prisons, and all those appeals were denied without any justification given for denial. No relief was granted. Plaintiff was greatly hindered because of physical limitations due to

injuries suffered while incarcerated at the Metropolitan Detention Center, Los Angeles, and at subsequent prisons. He is no longer confined to a wheelchair, but he still uses a walker and is under medical treatment. The costs to get photocopies and to pay for legal assistance and filing fees have been onerous. After Plaintiff paid the filing fee on May 10, 2017, he never received any communication from the court about any issue with fees. It only adds insult to injury for the U.S. Attorneys now to make a motion for dismissal partly on the false claim that the fee was not paid.

Plaintiff only asks the Court to consider this case on its merits. After all that has occurred, Plaintiff hopes that the Court will see that it is not fair or just to dismiss this case on the basis that a deadline was missed.

This case is about more than awarding money to the Plaintiff. It is about holding Bureau of Prisons staff accountable for their actions. As long as they are confident that U.S. Attorneys will protect them from lawsuits or punishment for their misdeeds, they will continue to act with impunity in abusing prisoners. This is precisely why the United States criminal justice system has such a poor reputation internationally. As detailed in the Complaint, this case is a perfect example of the violations of civil rights that occur all too often in U.S. prisons.

State and local jailers take their cues from the federal Bureau of Prisons, and if BOP staff can get away with violations of human rights, then there is little hope for humane treatment of prisoners on any level. Plaintiff asks the Court to make a strong statement that abuse of prisoners has to stop. In short, the way many employees of the Bureau of Prisons treat prisoners is a real and present danger to our American heritage of freedom and democracy, and a disgrace to the nation.

Plaintiff respectfully asks that the Court not to be taken in by the U.S. Attorney's attempt to dismiss this suit on minor procedural grounds. Plaintiff hopes that the Court will order the U.S. Marshalls to service the Summons to all defendants and order an investigation to find out the names of all those officials who are responsible for these severe violations of civil rights.

When the Court takes seriously its role as the decider of lawsuits, then an independent judiciary can be maintained. In these days of grave threat to American democracy, an independent judiciary is the sole protection left for

citizens whose rights have been violated. This appeal from a citizen is made not only for Plaintiff's benefit, but also on behalf of all prisoners who have been subjected to brutal and inhumane treatment by employees of the federal Bureau of Prisons.

## IV. **Conclusion**

For the reasons stated above, Plaintiff respectfully requests that the Court reject the government's Motion to Dismiss, and order an investigation to allow the case to be judged on its merits.

Dated: January 8, 2018

Respectfully submitted,

*Walter Lee Williams*

Walter Lee Williams

EXHIBIT A

## Transaction History

**Customer:** OPAL C WILLIAMS
OPAL C WILLIAMS
**Account:** CA/NV Checking #XXXXX9568

*required field

| Current Balance | Present Balance | Available Less Overdraft | Available Balance | Calendar |
|---|---|---|---|---|
| $2,555.15 | $3,733.37 | $2,755.15 | $2,755.15 | |

**Showing $93.41 Transactions**                    *denotes end of day balance

| Date Posted | Tran Type | Description | $ Debits(-) | $ Credits(+) $ | Balance |
|---|---|---|---|---|---|
| 05/10/2017 | Debit Card | USPS PO 05579602 1775 PALM SPR | -93.41 | | |

# CHASE ◯

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

April 22, 2017 through May 19, 2017
Primary Account: ●●●●●●●●●●●●●●

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | **1-800-935-9935** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00021946 DRE 703 141 14017 NNNNNNNNNN T 1 000000000 15 0000
OPAL C WILLIAMS
1932 S BARONA RD
PALM SPRINGS CA 92264-4858



## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Total Checking | 00000●●●●●●●● | $4,341.02 | $1,883.14 |
| Chase Total Checking | 00000●●●●●●●● | 9,659.82 | 12,915.96 |
| **Total** | | **$14,000.84** | **$14,799.10** |
| **TOTAL ASSETS** | | **$14,000.84** | **$14,799.10** |

**All Summary Balances** shown are as of May 19, 2017 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.



## CHASE TOTAL CHECKING

OPAL C WILLIAMS                                                        Account Number: 00000●●●●●●●●

### CHECKING SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$4,341.02** |
| Deposits and Additions | 3,347.45 |
| Checks Paid | -1,411.00 |
| ATM & Debit Card Withdrawals | -758.00 |
| Electronic Withdrawals | -3,636.33 |
| **Ending Balance** | **$1,883.14** |

The monthly service fee for this account was waived as an added feature of Chase Premier Plus Checking account.

# CHASE 

April 22, 2017 through May 19, 2017
Primary Account: 00000●●●●●●●●●●●

## CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 102 ^ | 05/08 | $200.00 |
| 126 * | 05/17 | 40.00 |
| **Total Checks Paid** | | **$240.00** |

If you see a check description in the Transaction Detail section, it means your check has already been converted for electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $9,659.82 |
| 04/24 | Credit DDA - Credit Deposit | 2,296.67 | 11,956.49 |
| 05/08 | Check          # 102 | -200.00 | 11,756.49 |
| 05/10 | Card Purchase With Pin  05/10 Usps PO 05579602 1775 Palm Springs CA Card 8763 | -93.41 | 11,663.08 |
| 05/16 | Deposit     1680937142 | 1,292.88 | 12,955.96 |
| 05/17 | Check # 126     Democratic Congr Arc      Arc ID: 1521267093 | -40.00 | 12,915.96 |
| | **Ending Balance** | | **$12,915.96** |

A monthly Service Fee was **not** charged to your Chase Total Checking account. Here are the three ways you can avoid this fee during any statement period.

- **Have direct deposits totaling $500.00 or more.**
  (You did not have a direct deposit this statement period)

- **OR, keep a minimum daily balance in this checking account of $1,500.00 or more**
  (Your minimum daily balance was $9,659.82)

- **OR, keep an average daily balance of qualifying linked deposits and investments of $5,000.00 or more**
  (Your average daily balance of qualifying linked deposits and investments was $11,665.84)

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 JPMorgan Chase Bank, N.A. Member FDIC



April 22, 2017 through May 19, 2017
Primary Account: 000000█████████

This Page Intentionally Left Blank

Page 4 of 4

EXHIBIT B

Reply including original
Date: Thu, 1 Jun 2017 16:08:03 -0700
From: Dion_Mitchell@cacd.uscourts.gov
To: lylehenry@fastmail.fm
Subject: Fw: UPDATE: Letter regarding filing fee of $92.21 not received
Parts/Attachments:
  1.1  Shown    82 lines  Text
  1.2  OK     109 lines  Text

Hello Lyle,

Here is the email from our Fiscal department.

Thank you

----- Forwarded by Dion Mitchell/CACD/09/USCOURTS on 06/01/2017 04:07 PM

From:   Fernando Ramos/CACD/09/USCOURTS
To:     Records CACD/CACD/09/USCOURTS@USCOURTS
Cc:     Dion Mitchell/CACD/09/USCOURTS@USCOURTS
Date:   06/01/2017 03:51 PM
Subject:   UPDATE: Letter regarding filing fee of $92.21 not received

Good afternoon, Dion

We received it -- it was in today's mail. It does indicate it was postmarked on 5/10 but it also indicates it did not leave the San Bernardino USPS until 5/25, possibly because of the zip code error.

It should be processed and docketed tomorrow morning.

Anything else, let me know.

From:   Records CACD/CACD/09/USCOURTS
To:     Fernando Ramos/CACD/09/USCOURTS@USCOURTS
Date:   06/01/2017 03:36 PM
Subject:   Fw: Letter regarding filing fee of $92.21 not received
Sent by:   Dion Mitchell

Fernando,

Can you check to see if you received this payment for partial filing fee.
Please advise.

Thank you,
Correspondence Clerk

Page 1

Reply including original
----- Forwarded by Dion Mitchell/CACD/09/USCOURTS on 06/01/2017 03:34 PM

From:    RADIO DOCTOR <lylehenry@fastmail.fm>
To:      "U.S. Courthouse Room G-8" <records_cacd@cacd.uscourts.gov>
Date:    06/01/2017 02:09 PM
Subject: Letter regarding filing fee of $92.21 not received
Sent by: lylehenry@fastmail.fm

1 June 17

Your letter dated 26 May 17 was received today by Walter Lee Williams
saying that you have not gotten the $92.21 partial filing fee and that
it is due by this Saturday, 3 June 17. A postal money order for $92.21
was sent to you on 10 May 17 and the transaction is shown on his bank
statement.

Please let me know if it has finally arrived. If not, I can bring you
the money this afternoon or tomorrow.

Details:

Civil Minutes - General
Case # CV17-3040 ODW (FFMx)
Walter Lee Williams vs. USA et al

U.S. Magistrate Judge: Fredrick F. Mumm
Deputy Clerk: James Munoz

Thank you very much.

Lyle Henry 213-880-4690 for Walter Lee Williams 702-595-8634 who just
now called me from the Geo Care half-way house at 2901 Sammy Davis Jr
Drive in Las Vegas, NV

Page 2